This is an appeal from a suit by The Home Indemnity Company, Inc., for declaratory judgment to determine its liability under a policy issued to Reed Equipment Company.[1] This coverage dispute arises out of the following facts: On February 7, 1977, two Reed Equipment employees, Allen Dean Bradwell and Joel Earl, were operating separate vehicles — Earl in a six-wheel truck and trailer followed by Bradwell in a one and one-half-ton truck — when the Bradwell truck was involved in a collision with an oncoming vehicle driven by Cecil David Turner. Earl viewed the accident in his rearview mirror and returned to give aid. Both Turner and Bradwell were seriously injured and a passenger riding in the Turner vehicle was killed.
Although the manner and time of its discovery are disputed, it was subsequently learned that a wheel came off the trailer being driven by Earl, thereby leading to speculation that the wheel collided with the Turner truck, causing the truck to collide with the Ford truck being driven by Bradwell. The missing wheel was recovered near the accident site a couple of days later and placed under lock and key on the premises of Reed Equipment Company. According to the testimony given by the company's president, Leo Reed, he first thought that the wheel may have been involved in the accident but later changed his opinion and only kept the wheel upon the advice of his brother who is an attorney.
In any case, though the accident itself was reported immediately to Reed Equipment Company's insurer, the existence of the missing wheel was not reported to either of the insurance companies involved — Home Indemnity, acting for Reed Equipment and its employees, or State Farm on behalf of Turner, until some eleven months after the accident. In the absence of this *Page 47 
information, it appeared to the investigators of both companies that fault lay with the Turner vehicle which had left its proper lane of traffic and collided with the Bradwell truck. Claims were made by both Reed Equipment Company and Bradwell against Turner's insurer, State Farm Mutual Insurance Company.
Approximately eleven months after the accident — sometime in December, 1977 — Bradwell telephoned State Farm's representative and related what he knew regarding the missing wheel and its possible involvement in the collision. This information was passed on by State Farm to Home Indemnity, which contacted Leo Reed and requested that he sign a "non-waiver agreement" whereby Home Indemnity would undertake to defend any suits brought against its insureds without thereby waiving any defenses it might have to liability (i.e., coverage) under the provisions of the policy. Reed refused.
In January, 1978, Turner and Bradwell commenced separate actions against Appellees seeking damages as a result of the February 7, 1977, accident. On January 30, 1978, Home Indemnity wrote Leo Reed and declined coverage as to the suit filed by Bradwell, citing the employee exclusion provision of the policy. The following day, Home Indemnity again sought a nonwaiver agreement from Reed apparently with respect to the action brought by Turner. Reed again refused and retained independent legal counsel. Home Indemnity then brought this action for declaratory judgment.
The trial Court, hearing the case ore tenus, decreed that Home Indemnity was liable to provide both defense and indemnification to Reed Equipment Company, Leo Reed, and Joel Earl concerning any suits brought against them arising out of the February 7, 1977, accident. The Court further decreed that Reed Equipment Company, Leo Reed, and Joel Earl were entitled to be reimbursed by Home Indemnity Company for all attorneys' fees and costs incurred in defending the pending actions brought by Bradwell and Turner. Home Indemnity Company appeals, challenging the sufficiency of the evidence to support the trial Court's final decree and alleging the trial Court's misapplication of the law to the facts.
The first issue raised on this appeal concerns the interpretation of the following two provisions of the policy issued by Home Indemnity:
 "7. Assistance and Cooperation of the Insured: The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits or proceedings. . . .
". . . .
 "10. Action Against Company — Coverage B: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."
The trial Court's findings and conclusions with respect to the above were, substantially, that neither Reed Equipment Company, Leo Reed, nor Joel Earl knowingly failed to cooperate with Home Indemnity Company and that, in any event, Home Indemnity Company was not prejudiced by the delay in learning of the missing wheel.
We agree with Appellant that the ore tenus presumption of correctness applies only to the resolution of conflicts in the evidentiary facts. The presumption of correctness accorded the trial court, hearing a case ore tenus, has no application where the facts are undisputed; and, under such circumstances, it is solely for the appellate court to determine whether the trial court misapplied the law to the undisputed facts.
Furthermore, we agree with Appellant that much of the evidence before the trial Court in this case was without dispute; *Page 48 
and, in large measure, the Court's findings are a mixture of law and fact, or they constitute factual premises for conclusions of law.
We must reject, however, the notion that the ore tenus rule has no field of operation in the instant case. There are, indeed, substantial areas of evidence in sharp conflict. For example, Bradwell states that Earl told him of the missing tire at the time of the accident. Earl denies this and points to earlier statements of Bradwell in direct contradiction to his later account of the tire incident. Bradwell contends he and Reed held a private conversation in the hospital concerning the tire. This is denied by Reed who counters with the contention that Bradwell's latest account is self-serving and coincides with his filing of suit for personal injuries against Reed Equipment Company, Leo Reed, and Joel Earl.
Because of the pendency of third-party litigation involving these parties, we follow the more prudent course of not detailing all of the evidence. Suffice it to say, those findings of the trial Court essential to the validity of its final order are sufficiently supported by the evidence of record and the inferences which may be reasonably drawn therefrom. The trial Court, as the trier of fact, was in the best position to judge the credibility of the witnesses testifying before it and to resolve conflicts in the testimony. We cannot say, therefore, that the trial Court was palpably wrong in its finding with respect to Appellees' knowledge concerning the role of the missing wheel in the accident.
Moreover, irrespective of the presumption of correctness accorded the trial Court's findings with respect to the disputed facts, Appellant cannot avoid its obligations on this ground because an insured's failure to cooperate is inconsequential unless it is both material and substantial.General Accident Fire Life Assurance Corp. v. Rinnert,170 F.2d 440 (5th Cir. 1948); Auto-Owners Insurance Co., Inc. v.Rodgers, 360 So.2d 716 (Ala. 1978); Stonewall Insurance Companyv. Perkins, 285 Ala. 699, 235 So.2d 838 (1970); Alabama FarmBureau Mutual Casualty Insurance Co. v. Cofield, 274 Ala. 299,148 So.2d 226 (1962); George v. Employers' Liability AssuranceCorporation, 219 Ala. 307, 122 So. 175 (1929).
The rule is elaborated upon in 44 Am.Jur.2d, Insurance, § 1561, as follows:
 "As a general proposition the insured must comply with all the requirements of the co-operation clause, but to constitute a breach of a co-operation clause by the insured which will justify the insurer in withdrawing from the defense of the action brought against the insured and in canceling the protection to him there must be a lack of co-operation in some substantial and material respect; a technical or inconsequential lack of co-operation or misstatement to the insurer is immaterial." At p. 445, citing George v. Employers' Liability Assur. Corp., supra, at note 18.
We note, initially, that none of the above-cited Alabama cases expressly states the test for determining what is material and substantial with respect to an insured's alleged failure to cooperate. Implicit in a number of these cases, however, is the requirement of prejudice to the insurer.
In Auto-Owners Insurance Company, Inc. v. Rodgers, supra, the insurer claimed that it had been prejudiced in its investigation of its insured's accident because of the latter's failure to meet with the company's investigators after repeated requests by telephone and by mail that he do so. Specifically, the insurer argued that, as a result of the insured's conduct, it was practically impossible to locate witnesses. The Court noted that the insurance company had access to the police report, and, also, could have taken the deposition of the accident witnesses; thus, concluded the Court, the insured's conduct "did not amount to a lack of cooperation in any substantial or material respect." Auto-Owners Insurance Co., supra, at 719. In George v. Employers' Liability AssuranceCorporation, supra, the Court rejected the insurer's argument that it had been materially prejudiced because its insured, who had moved to another city, refused to *Page 49 
come to court at his own expense. The Court noted that "there were numerous persons known to the insurer who had the opportunity to know and testify to what assured knew."219 Ala. at 309, 122 So. At 176.[2]
Here, Appellant alleges that it has been prejudiced by having been denied an opportunity to examine the evidence while still fresh. Appellant also contends that it must now "either seek settlement of the underlying civil actions or defend these actions at trial in an atmosphere tainted by the misconduct" of its insureds. With respect to the first of these claims, Appellant offers no explanation, nor can we discern any, of how the tire and rim (the evidence referred to) could have been any more helpful to the defense of its insureds had it been examined immediately after the accident instead of later. There is no dispute that Appellee Reed kept the tire and rim recovered near the scene of the accident and made them available to Appellant once the underlying civil actions were filed. To the extent that the tire and rim constitute evidence adverse to Appellant's defense of its insureds, they are neither more, nor less, damaging now than they were immediately after the accident. Appellant's second claim of prejudice is rendered moot by our affirmance of the trial Court's finding, in effect, that there was no misconduct.
It is urged by Appellant, however, that where, as here, the cooperation clause is made a condition precedent in the policy, the insured's failure to cooperate should absolve the insurer of its obligations under the policy regardless of any showing of prejudice. The case of American Fire Casualty Co. v.Tankersley, 270 Ala. 126, 116 So.2d 579 (1959), cited by Appellant in support of its position, concerned the failure of the insured to give timely notice and not an allegation of a failure to cooperate. Thus, there are two lines of cases in Alabama — those concerning failure to give timely notice, in which prejudice to the insurer need not be shown, and those concerning an allegation of the insured's failure to cooperate, which must be material and substantial — resulting in prejudice to the insurer.[3]
The second issue raised on appeal concerns the interpretation of the following exclusionary provision:
"Exclusions
"This insurance does not apply:
"(a) . . .
"(b) . . .
 "(c) to bodily injury to any employee of the insured arising out of and in the *Page 50 
course of his employment by the insured. . . ."
Appellant contends, under the above exclusion, it owes no coverage to Leo Reed and Joel Earl with respect to the suit brought by their former co-employee, Bradwell, and that the trial Court erred in holding to the contrary. Both sides concede on appeal the "employee of the insured" exclusion is governed by United States Fire Insurance Co. v. McCormick,286 Ala. 531, 243 So.2d 367 (1970). The McCormick Court, interpreting a similar provision, coupled with a "severability clause," held that "[e]ach insured has coverage except with respect to his own employees, and the unqualified word `insured' . . . means only the person claiming coverage."286 Ala. at 540, 243 So.2d at 375. Inasmuch as Bradwell was an employee of Reed Equipment Company, Inc., and not of Leo Reed or Joel Earl, Appellant cannot avoid coverage to Reed and Earl (with respect to the Bradwell suit) on this basis.
The third issue concerns the following definition of insured:
"None of the following is an insured:
 "(i) any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;"
This policy provision excludes from the definition of insured "any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment." With respect to this definition, Appellees make three separate arguments: First, noting that Appellant did not urge this "theory" in the trial Court, Appellees cite Vaughn v. Thomas, 372 So.2d 1309 (Ala. 1979), for the proposition that a party cannot try his case on one theory and then appeal on a separate theory. Vaughn v.Thomas, supra.
The rule requiring adherence to the theory relied on below, however, does not mean the parties are limited in the appellate court to the same reasons or arguments advanced in the lower court upon the matter or question in issue. 5 Am.Jur.2d, Appealand Error, § 546 at 32. Here, Appellant brought suit for declaratory judgment as to its contractual obligations toward Appellees Leo Reed and Joel Earl with respect to a suit brought against them by a former co-employee for bodily injury incurred in the course of employment. Appellant's theory was that, in these circumstances, there was no coverage to Appellees under the terms of the policy. If, in fact, the policy did not by its terms extend coverage to Appellees in the context of the Bradwell suit,[4] it is of no consequence that Appellant improperly identified the applicable language of the policy.
Appellees' second argument as to why effect ought not be given to the "co-employee" definition pertains to a letter in which the insurer declined coverage because the "policy specifically excludes bodily injury claims by employees." According to Appellees, this statement refers specifically to the exclusionary clause; and thus, Appellees contend, Home Indemnity "waived all other grounds of forfeiture."
Where an insurer specifically disclaims liability because of one ground of forfeiture, it waives all other grounds of forfeiture which might have been stated but were not.Auto-Owners Insurance Co. v. English, 266 Ala. 80, 94 So.2d 397
(1957). Similarly, an insurer who disclaims liability solely on a theory of noncoverage thereby waives his defenses with respect to any grounds of forfeiture which might have been raised. St. Paul Fire and Marine Insurance Co. v. Smith,280 Ala. 425, 194 So.2d 830 (1967).
Although the doctrine of waiver may extend to practically every ground on which an insurer may deny liability based on forfeiture, the doctrine is not available to bring within the coverage of a policy risks not covered by its terms or risks *Page 51 
expressly excluded therefrom. 43 Am.Jur.2d, Insurance, §§ 1058 and 1184 at pp. 983 and 1102-1103. Thus, coverage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written. Aetna Ins. Co. v. PeteWilson Roofing Heat. Co., Inc., 289 Ala. 719, 272 So.2d 232
(1972). Here, the policy provision in question pertains to coverage rather than forfeiture. It follows that it could not have been waived by Appellant; and, if the provision is without ambiguity, it is due to be given effect.
Appellees' third contention addresses the merits of the "definition of insured" provision, contending that Leo Reed, as an executive officer of the corporate employer, is not a fellow employee of Bradwell.
Examining this definition in light of the instant facts, we find the Bradwell suit is one brought by a former employee of Reed Equipment Company for bodily injury sustained in the course of employment. Both Leo Reed and Joel Earl are also employees of Reed Equipment Company and are sued by Bradwell with respect to acts alleged to have been committed while they were engaged in their employment. The language of this definition, by its plain wording, excludes as an insured an employee who is sued by a co-employee as a result of bodily injuries sustained in the course of employment. We find no ambiguity in this. It follows, then, that neither Leo Reed nor Joel Earl is an insured according to this definition.
In so holding, we are not unaware of a recent Federal District Court opinion reaching a contrary result with respect to an identical "fellow employee" definition. Mission Ins. Co.v. Barnett, 476 F. Supp. 925 (S.D. Ala. 1979), employing the functional test alluded to by way of dictum in Jones v.Watkins, 364 So.2d 1144 (Ala. 1978), held that individuals who were acting in the capacity of executive officers of the named insured corporation were not co-employees of the injured company employee, and, hence, were not excluded from coverage under the "co-employee" definition of insured.
The difficulty with this conclusion is in its premise: That, within the corporate structure, there is a corporate employer, and there are employees of the corporation, and others, e.g., executive officers, who are neither one nor the other. This premise stands in contradiction to Barnett's other holding, in reliance upon McCormick, with respect to the "employee of the insured" exclusion. That is to say, McCormick's invalidation of the "employee of the insured" exclusion is bottomed on the broad classification, within the employment structure, of employer and employee. Implicit in the McCormick holding that an executive officer is a party "other than the employer" is the premise that the corporate employment structure admits of a single entity as the "employer" — the corporate entity itself — and all others are "employees."
A supervisory employee of a corporate employer, whatever his function, is not the employer — and, necessarily, falls on the "employee" side of the employer/employee classification line. Indeed, were this not true, the third-party suit itself would fail. Given the two-category classification of both aspects ofMcCormick, (the third party "immunity" issue and the "employee of the insured" exclusion issue), the insurance carrier is entitled to a consistent interpretation with respect to the "co-employee" definition now before us.
Our validation of the "fellow employee" provision, of course, does not preclude the parties (insurer and employer-insured) from contracting for liability coverage for executive officers and supervisory personnel, or any other employees. We hold merely that a definition which is expressed in terms of "fellow employee," in the context of a corporate employment structure, refers to those company personnel other than the employer.
The last issue raised concerns the trial Court's decree that Appellant reimburse Appellees for their legal expenses and costs incurred to date in defending the underlying civil actions brought by Bradwell *Page 52 
and Turner. Appellant contends the refusal by Appellees to sign a "non-waiver agreement" released Appellant from any obligation toward the defense of its insureds prior to resolution of this coverage dispute.
In view of our holding that coverage under the policy did not extend to Leo Reed and Joel Earl with respect to the Bradwell suit, the resolution of this issue necessarily pertains only to the legal expenses and costs incurred to date by Reed Equipment Company, Leo Reed, and Joel Earl in their defense of the pending suit brought by Turner. Appellant Home Indemnity contends in brief that Appellees, by refusing to sign a "non-waiver agreement," forced Appellant either to withhold providing a legal defense or waive its defenses as to coverage.
We find no merit to this contention; and, furthermore, Appellant cites no authority for the proposition that a liability insurer cannot, absent a "non-waiver agreement," undertake the legal defense of its insureds without prejudicing its rights in a coverage dispute. To the contrary, CampbellPiping Contractors, Inc. v. Hess Pipeline Co., 342 So.2d 766
(Ala. 1977), cited by Appellant, makes it clear that only notice to the insured of the insurer's reservation of its rights is required.
In summary, we affirm that portion of the trial Court's decree as it relates to the suit brought by Turner against Appellees Reed Equipment Company, Leo Reed, and Joel Earl, with respect to both coverage and the reimbursement of attorney's fees and costs. With respect to the trial Court's decree as it relates to the Bradwell suit, however, we reverse and render as to both coverage and reimbursement.
AFFIRMED IN PART; AND IN PART REVERSED AND RENDERED.
TORBERT, C.J., and FAULKNER, ALMON, SHORES, EMBRY, and BEATTY, JJ., concur.
MADDOX, J., concurs in the result.
BLOODWORTH, J., not sitting.
[1] This appeal involves two separate cases which were consolidated for trial below and which, for convenience, we will treat as a single case on appeal.
[2] In Curran v. Connecticut Indemnity Co. of New Haven,127 Conn. 692, 20 A.2d 87 (1941), the Connecticut Supreme Court stated the rule and test, together with their rationale, as follows:
 ". . . [T]he condition of co-operation with an insurer is not broken by a failure of the assured in an immaterial or unsubstantial matter . . . because they are not included within the fair intendment of the requirement that the assured co-operate, and lack of prejudice to the insurer from such failure is a test which usually determines that a failure is of that nature." Cited in 44 Am.Jur.2d, Insurance, § 1561, at note 18, pp. 445-446.
[3] At first blush, the reason for this distinction between an insured's failure to give timely notice and his failure to cooperate may not be readily apparent. The showing of the prejudice requirement in the one case but not in the other is explainable, however, in this: "Cooperation clauses" as conditions precedent to the insurer's obligations impose broad, vague requirements, which, in the absence of legally applied standards, would put into doubt the contractual obligations between insurer and insured in nearly every case. On the other hand, the requirement that the insured give timely notice to his insurer is specific and, in most cases, easily complied with. In other words, the former lends itself to subjective proof while the latter is more readily subject to objective proof.
Moreover, from the insurer's point of view, the prejudice resulting from an insured's failure to give timely notice can be readily assumed though, as a practical matter, it may be difficult to prove. It can be noted, finally, that the apparent harshness of the rule set forth in Tankersley, supra, in large measure has been ameliorated by subsequent modifications of the rule found in later cases which have looked to the reasonableness of the insured's delay in giving notice to his insurer. See Liberty Mutual Insurance Co. v. Bob Roberts Co.,357 So.2d 968, 969 (Ala. 1978); and Southern Guaranty InsuranceCo. v. Thomas, 334 So.2d 879 (Ala. 1976).
[4] The defendants in the Bradwell suit (Leo Reed and Joel Earl) are the only Appellees concerned with the co-employee coverage issue.