SHORES, Justice.
This is an appeal from a declaratory judgment requiring the insurer, The Fidelity & Casualty Insurance Company of New York (hereinafter referred to as “F & C”), to reimburse its insured, Employers Insurance Company of Alabama, Inc. (hereinafter referred to as “Employers”), for attorney fees and amounts paid to settle one of five lawsuits against Employers.
Employers is in the business of writing casualty, workmen’s compensation, general liability, and fire insurance for various businesses throughout the state of Alabama. Among its insureds are Thoray Equipment Company, Cahaba Veneer, Inc., Kirkland Enterprises, Inc., Kieffer Custom Converting Corporation, and Phoenix Lumber Company.
Each of Employers policies providing workmen’s compensation coverage to these entities contains the following language:
“Inspection and Audit: The company and any rating authority having jurisdiction by law shall be permitted but not obligated to inspect at any reasonable time the workplaces, operations, machinery and equipment covered by this policy. Neither the right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the insured or others to determine or warrant that such workplaces, operations, machinery or equipment are safe or healthful, of are in compliance with any law, rule or regulation.”
Pursuant to this provision, Employers inspected the premises, at various locations in Alabama, of each insured mentioned above. Following these safety inspections, a number of the insureds’ employees were allegedly injured. Beginning in 1979, these employees filed separate and unrelated individual suits against Employers, claiming negligence in the conduct of the safety inspections.
The five negligent safety inspection lawsuits at issue in this case are Nichols v. Thoray Equipment Company, CV-79-2238, Jefferson County; Anderson v. Employers Insurance Company of Alabama, CV-81-17, Bibb County; Pickell v. Kirkland Enterprises, CV-80-3479, Jefferson County; Tolliver v. Smith, CV-81-06, Sumter County; and Littleton v. Employers Insurance Company of Alabama, CV-81-3, Russell County. These claims shall hereinafter be referred to as the Nichols claim, the Anderson claim, the Pickett claim, the Tolliver claim, and the Littleton claim.
On or about April 18, 1978, defendant F & C issued a comprehensive general liability insurance policy to Employers for one year. This policy was renewed through a *305 separately written policy which extended coverage through April 18, 1980.
A written endorsement is attached to and made a part of each of the aforementioned insurance policies. This endorsement is labeled Y-388A and styled “Insurance Company as Insured Endorsement.” The endorsement provides, in pertinent part:
“The insurance afforded by this policy does not apply to any obligation assumed by or imposed upon the insured under the provisions of any contract of insurance issued by the insured to another.”
Prior to purchasing the F & C policies, Thomas H. Hoover, part owner and operator of Employers, talked with Bob Wilkins, an independent agent with Interstate Underwriters, about obtaining more comprehensive liability insurance. Wilkins gave Hoover a number of policies from different companies to examine. Hoover ultimately selected the F & C policy. Upon delivery of the F & C policy in 1978, Wilkins told Hoover that the Y-388A endorsement excluded coverage for safety engineer liability in negligent inspection suits. Hoover testified at trial that from that day until the first part of 1982, he was under the impression that the policies would not cover the lawsuits in question. He stated that he first realized that there might indeed be coverage under existing policies after a discussion with John Baker, an officer of Employers.
In early 1982, Baker visited the General Reinsurance Corporation in New York, and after meetings with individuals at that company, he concluded that Employers should reexamine its policies for negligent safety inspection lawsuit coverage possibilities. After talking with Baker, Hoover instructed Employers’s vice-president in charge of claims, Harold A. Duenow, to^ locate its liability policies and take the necessary steps to procure coverage.
Pursuant to Hoover’s instructions, Due-now set about the task of finding the policies. His efforts were thwarted somewhat because, since 1922, all of Employers’ insurance policies had been maintained by the corporate secretary, L.A. Henry. Due to Henry’s haphazard filing methods, no one else knew the location of the policies at the time of his retirement in 1979 and his death in 1981 at age 85.
Duenow had two or three meetings with Andy Ardivino of Interstate Underwriters to determine whether Employers had an insurance policy that would cover the safety engineering negligence suits that had been filed against Employers. At these meetings, Duenow did not divulge the names of the particular cases; he just talked generally about the fact that these cases were being filed. Duenow testified that at the time of these meetings he had no knowledge of the existence of the F & C policy, even though Hoover apparently did.
Duenow finally discovered the F & C policies in Employers’ company safe in June of 1982. On the fifteenth of that month, he wrote Ardivino a letter stating that in his opinion there was coverage under the F & C policies for the Anderson, Nichols, and Littleton claims. This letter was forwarded to Ben Long, supervising adjuster for Underwriters Adjusting Company. F & C and Underwriters Adjusting Company are both subsidiaries of Continental Insurance Company.
Long treated Duenow’s letter as a notice of loss to F & C. He sent a representative to Employers’ office to copy its claims files, ordered a copy of the policy with all endorsements from the underwriting department, and discussed coverage questions under Y-388A with a Continental underwriter. After taking these steps to process Employers’ claim, Long sent letters to Due-now denying coverage for the Anderson, Nichols, and Littleton claims, based on the language of Y-388A. Duenow never notified F & C of the Tolliver and Pickell claims.
At trial, F & C maintained that its endorsement Y-388A excluded coverage of the negligent safety inspection suits. The trial court, however, found that Y-388A was ambiguous and, therefore, was not effective to exclude coverage for such suits.
Also at trial, F & C raised, for the first time, the defense of lack of notice, relying on the following policy provisions:
*306 “4. INSURED’S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT
“(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. “(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.
[[Image here]]
“5. ACTION AGAINST COMPANY. “No action shall lie against the company, unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy....”
The Anderson claim was filed in February of 1981 and was ultimately settled in May of 1985. The trial court found that F & C’s general denial of coverage as to the Anderson claim constituted a waiver of its policy’s notice provisions and that, since the Anderson claim was still an active and ongoing claim capable of a defense at the time of notification, F & C breached its insurance contract in failing to defend Employers.
The Nichols claim was filed in May of 1979 and was settled on February 14,1983. The Littleton claim was filed in January of 1981 and was settled on December 6, 1982. Attached to its motion for partial rehearing, Employers offered affidavits from the attorneys in Nichols and Littleton, stating that no substantial activity occurred in these cases prior to notification of the claims in June 1982. In their opinion, there was ample opportunity after this date for F & C to take over the defense of Employers. Nevertheless, the trial court 'maintained its original holding with respect to the Nichols and Littleton claims:
“[TJhere was no just reason for the delay [in notifying F & C] and ... substantial prejudice resulted to F & C from the failure of the insured to forward suit papers ‘immediately’ and to give reasonable notification. Moreover, it should be noted that in either one or both of these cases, the third party claims had actually been settled with the third party Claimant by Employers or were in such a status as to be so nearly completed as essentially to render the cases concluded. Employers argues with respect to these ... cases that F & C waived these policy violations. However, this Court sitting in Equity must apply the legal maxim that ‘he who seeks equity must do equity.’ Parties cannot come into equity in their own behalf when their conduct previously has been such as to prevent equity from being done, and the Doctrine of Laches becomes applicable based upon lack of diligence and good faith in invoking known rights. The Court here not only feels that the Doctrine of Laches is applicable, but also notes that the delay in complying with the conditions precedent to coverage with respect to these ... cases, in essence, amounted to the insured finally notifying the insurer of the two (2) cases which were, in effect, ‘moot’ at the time of the ultimate notification. This Court sitting in Equity, therefore, is of the opinion that no coverage should be allowed for these ... claims.”
The trial court also found that F & C had no duty to defend the Tolliver and Pickell claims, since it was not notified of the pendency of the claims nor provided with suit papers prior to the institution of the declaratory judgment action.
Inasmuch as the evidence is uncon-tradicted, the ore tenus presumption of correctness does not attach to the trial court’s ruling in this case. Therefore, we review its conclusion without a presumption of correctness. Home Indemnity Co. v. Reed Equipment Co., 381 So.2d 45 (Ala.1980); Stiles v. Brown, 380 So.2d 792 (Ala.1980).
This Court first recognized an action for negligent inspection in Beasley v. *307 MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971), and we held that if a workmen’s compensation carrier voluntarily undertakes to provide safety inspections, it is under a duty to use due care.
In Bailey v. Liberty Mutual Ins. Co., 451 So.2d 279 (Ala.1984), the Court held that an action for negligent inspection under a provision permitting inspections, identical to the one in the case before us, is ex delicto rather than ex contractu, because the contractual provision itself does not obligate the insurance company to inspect the insured’s premises.
Employers contends that the Y-388A exclusion does not operate to exclude coverage for the negligent safety inspection lawsuits, since it speaks in terms of obligations assumed by or imposed upon Employers in its workmen’s compensation insurance contracts. It argues that a negligent inspection suit, sounding in tort, cannot be excluded by a provision that pertains only to actions that may be brought on the insurance contract itself.
We do not agree with Employers’ construction of the Y-388A exclusion. The type of action, be it in contract or tort, is of little relevance in relationship to the origin of the right to inspect.
By virtue of its workmen’s compensation insurance contracts, Employers was permitted to enter upon its insureds’ business premises to make safety inspections. It is no secret in the insurance industry that workmen’s compensation carriers include these inspection provisions in their insurance contracts in an effort to reduce industrial accidents and enhance profits. Without that insurance contract, Employers would have no interest in inspecting the business premises nor a right to go upon its insureds’ premises to do so.
We hold that the duty of due care in the inspection of insureds’ premises, the breach of which creates in the insureds’ employees a cause of action for negligent inspection, was assumed by Employers under the quoted provision of its workmen’s compensation insurance contract. The negligent inspection claims against Employers owe their very existence to Employers’ own insurance contracts. These actions fall clearly within the unambiguous exclusionary terms of Y-388A. Where policy provisions are unambiguous, courts have no authority to ignore them or rewrite them by judicial construction. Turner v. United States Fidelity & Guaranty Co., 440 So.2d 1026 (Ala.1983).
Because we determine that the comprehensive liability policy issued by P & C to Employers effectively excludes liability for the negligent safety inspection claims, we need not address the notice and waiver issues, although we agree with the conclusion reached by the trial court on these issues.
Accordingly, the judgment of the circuit court is affirmed as to the Nichols, Little-ton, Tolliver, and Pickell claims, and is reversed as to the Anderson claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.