[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10629
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-00868-CSC

W.L. PETREY WHOLESALE CO., INC.,

Plaintiff - Appellant,

versus

GREAT AMERICAN INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(August 6, 2015)

Before TJOFLAT, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

In this case, W.L. Petrey Wholesale Company ("Petrey") appeals the district court's summary judgment in favor of defendants Great American Insurance Company ("Great American").  After careful consideration of the parties' briefs and the record, we affirm.

I.

Petrey sells wholesale goods and supplies to convenience stores through a network of sales people.  Justin Bree was a route salesperson for Petrey in central and southern Indiana from 2007 until 2013, when he was fired because his primary customer requested that he not service its stores any longer.  Route salespersons are required to drive a Petrey company truck and to rent a storage facility in which to store Petrey inventory.  When Bree was fired, Petrey took possession of his delivery truck and its contents, his computer equipment, and the storage unit where Bree kept Petrey's inventory.

A month after Bree's termination, Petrey discovered that the inventory in the storage unit was short by 82,510 bottles of 5-Hour Energy products, worth $111,415.35.  Petrey audited Bree's route inventory records and took a physical count of the route inventory in the storage unit; a comparison of the physical inventory count with the computer generated perpetual inventory count revealed a shortage of physical inventory.  An additional comparison of the physical inventory count with the records of all route transactions involving 5-Hour Energy

2

products confirmed the exact shortage amount of 82,510 bottles. Petrey also compared Bree's orders for those products with his sales, which revealed a pattern of Bree's ordering more 5-Hour Energy products than his sales would have required.

Petrey filed a claim with its insurance company, Great American, under a Crime Protection Policy, which insured against "loss of, and loss from damage to, money, securities and other property resulting directly from dishonest acts committed by an employee." Crime Protection Policy, Doc. 17-2 at 6.[1] Great American denied the claim based on the inventory shortages exclusion in the policy, which read: "We will not pay for . . . [l]oss, or that part of any loss, the proof of which as to its existence or amount is dependent upon: (a) An inventory computation; or (b) A profit and loss computation." *Id.* at 11.

Petrey filed this action for breach of the insurance contract and subsequently added a claim for bad faith. Great American filed a motion to dismiss or, in the alternative, for summary judgment based solely on the inventory shortage exclusion. The district court granted the motion for summary judgment, concluding that the inventory shortage exclusion applied and barred Petrey's claim. Petrey timely appealed.

---

[1] Citations to "Doc." herein refer to docket entries in the district court record in this case.

II.

We review a district court's grant of summary judgment *de novo*.  *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 341 (11th Cir. 2012).  "At this stage in the proceedings we are required to view all of the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  *Id*. at 342 (internal quotation marks omitted).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

III.

Under Alabama law,[2] to prevail on either its breach of contract or bad faith claim, Petrey must show that the loss is covered by the insurance policy.  *See State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013).  Here, it is undisputed that the policy covers loss of property caused by employee theft.  But the insurance policy expressly excludes employee theft claims that are dependent upon proof of loss by an inventory calculation or profit and loss calculation.  Such exclusions are intended to protect insurers from errors that may be inherent in a

---

[2] Because this is a diversity case concerning an Alabama insurance contract, we apply Alabama substantive law.  *St. Paul Fire & Marine Ins. Co. v. Era Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 894 n.1 (11th Cir. 2009).  Petrey does not contend otherwise.

business's self-created inventory records (for example, as a result of negligence or improper bookkeeping).  *See American Fire & Casualty Co. v. Burchfield*, 232 So. 2d 606, 609 (Ala. 1970).  Petrey does not argue that the exclusion is ambiguous. We therefore must consider whether Petrey's claims for missing inventory are based upon either type of prohibited calculation.

In *Burchfield*, the Alabama Supreme Court confronted a similar insurance policy provision, which excluded from coverage a

> loss, or [] that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of Money, Sec[u]rities or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees.

*Id.* at 607.  The plaintiff, a wholesale grocer, filed a lawsuit against its insurer claiming coverage for a loss due to employee theft.  A jury entered an award for the grocer based on an inventory computation.  The insurance company sought a new trial, arguing this evidence was excluded by the insurance policy.  The Alabama Supreme Court rejected the argument, holding that "the prohibition is against recovery on proof of inventory loss alone." *Id.* at 609.  The prohibition did not apply to the grocer because it had offered independent proof, in the form of sworn affidavits by three of its employees that they stole company property, of the loss it suffered as a result of employee dishonesty:  "[W]e do not believe that the

5

provisions of the policy preclude after that proof has been made, the use of inventory records to show the amount of the loss." *Id.*; *see also Fidelity & Deposit Co. v. Southern Utilities, Inc.*, 726 F.2d 692, 695 (11th Cir. 1984) ("More recent decisions tend to allow an inference of employee dishonesty to be drawn from relatively thin circumstantial evidence and then to permit the full extent of the losses to be proven by inventory comparisons. Generally, these cases have required some proof of dishonesty by employees as a condition precedent to the admission of inventory comparisons to establish the full amount of loss.").

Petrey has provided no independent evidence of Bree's theft; it relies solely on inventory comparisons to prove the claimed loss.[3] Petrey argues that its physical inventory count provided independent evidence by showing that Bree ordered the goods in question, received them from Petrey, did not deliver them to his customers, and did not have them on hand in his storage locker. But this argument is circular, as Petrey has supported these assertions only with order and sales records — which boil down to inventory comparison computations. *See Fid. & Deposit Co. of Md. v. So. Utils., Inc.*, 726 F.2d 692, 695 (11th Cir. 1984) ("An

---

[3] Petrey argues on appeal that the fact that Bree vanished after he was fired is evidence that he stole the 5-Hour Energy bottles. Petrey did not make this argument to the district court, *see Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1329-30 (11th Cir. 2004) (declining to consider argument raised for the first time on appeal); but, in any event, the record contradicts Petrey's assertion that Bree disappeared after he was confronted about the missing inventory. Petrey only discovered the shortage a month after Bree's termination for reasons unrelated to theft, and only then did Petrey attempt to contact Bree with "no success." Parks Affidavit, Doc. 21-1 at 25-26.

inventory computation is an inventory arrived at by taking a beginning inventory, adding purchases and deducting the cost of merchandise sold." (internal quotation marks omitted)).  *Burchfield* requires independent evidence of employee dishonesty, which is absent here.

Petrey also argues that it provided independent evidence of employee dishonesty by showing that only Petrey employees had access to Bree's inventory. We agree with the Second Circuit that "circumstantial evidence that, if a loss in fact was sustained, [the insured's] employees were the perpetrators" is not independent evidence of the existence of a loss.  *Dunlop Tire & Rubber Corp. v. Fid. & Deposit Co. of Md.*, 479 F.2d 1243, 1247 (2d Cir. 1973).  Petrey's assertion that only its employees could have stolen the 5-Hour Energy bottles "presupposes the factual existence of a loss" and "merely tends to foreclose the possibility of theft by persons other than employees," rather than prove that employees stole anything from the company.  *Id.*

Finally, Petrey argues that Great American's own prior coverage determinations show that the inventory shortage exclusion does not apply here.  In 2011, Petrey filed a claim for theft of merchandise worth $102,897.05 by an employee, Jason McKean.  The same Crime Prevention Policy was in place then, and the policy included the same inventory shortage exclusion that is at issue here. Great American paid the claim to Petrey in full without contest.  Petrey now argues

7

that because the claim for Bree's theft was essentially identical, it too should be covered by the policy.  But Alabama law forbids courts from using extrinsic evidence (such as the parties' course of dealing) to interpret an unambiguous contractual provision.  *Drummond Co. v. Walter Indust.*, 962 So. 2d 753, 780 (Ala. 2006).  Petrey does not argue that the inventory shortage exclusion is ambiguous, and we think the provision is clear on its face.  We therefore may not consider the extrinsic evidence relating to the McKean claim when interpreting the exclusion.[4]

Because Petrey cannot point to any evidence of loss by employee theft other than its own inventory comparison computations, the loss was excluded from coverage.  The district court properly granted summary judgment to Great American.

**AFFIRMED.**

---

[4] Similarly, Alabama law prevents Petrey from using the McKean claim to argue that Great American has waived its right to exclude the Bree claim from coverage.  *See Home Indem. Co. v. Reed Equip. Co.*, 381 So. 2d 45, 50-51 (Ala. 1980) ("[T]he doctrine [of waiver] is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom.").