MOORE, Judge.
T.J., Jr. (“the- father”), and J.J. (“the mother”) appeal from a judgment entered by the Winston Juvenile Court (“the juvenile court”) terminating their parental rights to H.D.J. (“the child”).
Procedural History
On October 13, 2015, the Winston County Department of Human Resources (“DHR”) filed a petition alleging that the child was dependent. That same day, the juvenile court entered an order permitting DHR to immediately take the child into its custody. That order contained a notation indicating that an oral pickup order had been issued on October 7, 2015. Also, on October 13, 2015, the juvenile court held a shelter-care hearing, and, on October 16, 2015, a shelter-care order was entered maintaining the child in DHR’s custody. After an adjudicatory hearing, the juvenile court entered an order on January 25, 2016, declaring the child dependent, determining that reasonable efforts by DHR to reunite the child and the parents were not required, and maintaining custody of the child with DHR. After a permanency hearing, the juvenile court entered an order on March 23,. 2016, providing that the permanency plan for the child was adoption with no identified resource.
On June 1, 2016, DHR filed a petition requesting that the juvenile court terminate the mother’s and the father’s parental rights to the child. The mother and the father, through the same counsel, filed an answer to the petition on June 16, 2016. After a trial, the juvenile court entered a judgment on August 23, 2016, terminating the mother’s and the father’s parental rights to the child. On September 1, 2016, the mother and the father filed a joint postjudgment motion, and, on September 6, 2016, the mother and the father filed their notice of appeal. The notice of appeal was held in abeyance pending the denial, by operation of law, of their postjudgment motion on September 15, 2016. See Rule 1(A) & (B), Ala. R. Juv. P.; Rule 69.1, Ala. R. Civ. P.; and Rule 4(a)(5), Ala. R. App. P.
Facts
Tyler Kilgore, a child-abuse-and-neglect investigator for DHR, testified that DHR had received reports that the parents had been homeless but that they were, at the time DHR took custody of the child, living with the father’s parents; he testified that the reports also indicated that the father was using drugs. He testified that DHR took the child into its custody in October 2015. According to Kilgore, both the mother and the father submitted to drug tests. The mother tested positive only-for drugs for which she had a prescription, but the father tested positive for methamphetamine and amphetamines. Kilgore testified that the father had claimed that he had not used drugs but had simply been in the home of someone who had’ been smoking those drugs.
Martha Haynes, a foster-care worker for DHR, testified that DHR had sought to implement services for the mother and the father through “FOCUS,” but, she said, FOCUS employees, who had worked with the parents before, had refused to work with them again. She testified that she was not aware of any extensive parenting program similar to the FOCUS program but that the parents had completed a less extensive parenting class.
Haynes testified that DHR had ordered both the mother and the father to submit to a psychological evaluation. A psychological evaluation was also done on the child. The reports from those evaluations were entered into evidence. The reports indicat *364 ed that the mother and the father had requested that an older child “be placed in foster care [in 2010] due to his purported disruptive behaviors” and that then- parental rights to that child had been terminated in 2012 due to the mental instability of the mother and the father. The mother had previously had her parental rights terminated to two other children in 2005 and 2006.
According to the father’s psychological report, the father admitted that the parents had engaged in domestic violence. The psychologist noted that the father’s full-scale IQ score is 67 and that that score “meets part of the requirements for a diagnosis of mild mental retardation.” According to the psychologist, the father reported that he had used methamphetamine weekly for two years before ceasing use of the drug in 2013. The father also acknowledged having recently used the drug, but, he claimed, it had been “only once” in 2015.
Haynes testified that the psychologist had recommended that the father participate in random drug screening, individual counseling, marital counseling, and “Celebrate Recovery.” Haynes testified that the father had been referred to the Northwest Alabama Mental Health Center to address his drug usage and anger-management problems. She testified that domestic violence between the mother and the father had been an ongoing issue. She testified that the mother and the father had not participated in marital counseling.
The mother’s psychological report indicated that the mother had experienced suicidal thoughts her entire life and that she suffers from bipolar disorder. The psychologist noted that her full-scale IQ score is 80, which, he said, is “within the Low Average Range of intelligence.” The report also noted that the mother had reported that the father had had an affair and had moved in with his paramour, with whom, she claimed, he had used drugs. The mother also reported that she had subsequently reunited with the father but that she had moved in with the father and his paramour for some time. The psychologist reported that the mother’s “Child Abuse Potential Inventory” results suggest that the mother “shares personal and interpersonal characteristics of known physical child abusers.”
Haynes testified that the parents complain that the child is hyper, does not “mind,” and will not sit still. Before this case was instituted, the parents had taken the child to Children’s Hospital of Birmingham to be evaluated for attention-deficit/hyperaetivity disorder (“ADHD”). Haynes testified that the physician who had evaluated the child at Children’s Hospital explained to her that the problem was not the child’s behavior but, instead, was with the parents’ parenting. The psychological report on the child indicated that he does not have ADHD.
Haynes testified that she does not believe that the mother and the father can care for the child without supervision. She testified that they both have difficulty understanding what the child should be doing at each age. Haynes testified that the parents often fight in front of the child at visitations; that, on a few occasions, the father had fallen asleep during visitations; that the mother and the father are loud; that the mother and the father often overreact to situations, which, she said, has an effect on the child; that the mother and the father had yelled at the child and had threatened to spank the child; that the mother had spanked the child for accidentally hitting her with a ball; that the mother and the father had engaged in inappropriate conversations with the child; and that the mother and the father had sometimes ended their visits early without a reason. Haynes testified that the child in *365 teracts more with the mother than with the father and that the child often gets upset with the father or avoids physical affection with him and states that the father is mean. She testified that the mother and the father would make the child feel guilty for not showing the father affection and that, after one such occasion, the child had hidden under the table and had said he felt sick.
Pamela Sutherland, the supervisor of DHR’s child-protective-service unit, testified that the father had gotten upset with her at one visit and had stood up and pointed his finger in her face. She testified that the parents are very loud and that the parents would affect the child in such a way that he would become loud and disruptive.
Haynes testified that, at the time of the trial, the behavior of the mother and the father was consistent with their behavior at the time their parental rights had been terminated to their other child in 2012. She testified that the major issues the parents have are their low mental capacities and the anger and domestic-violence issues. According to Haynes, the father continued to exhibit anger even after completing anger-management counseling. She testified that the father had not tested positive for drugs subsequent to the child’s having been taken into DHR’s custody, but, she said, at the time of the trial, he had not recently attended “Celebrate Recovery.” She testified that the parents had had housing since February 2016.
The mother testified that there had been no incidences of domestic violence between her and the father since the child was born. She testified that she sees a psychiatrist and goes to counseling once every three months. The mother testified that she, the father, and their pastor had decided against the parents’ engaging in marital counseling because, she said, the parents wanted to leave the past in the past. She also testified that, at the time of the trial, the father was attending “Celebrate Recovery” two or three times a month and that she had been attending with him to support him. The mother testified further that, before the child was taken into DHR’s custody, she had taken the child to Children’s Hospital for an evaluation and that she had subsequently attended a parenting class there.
The father testified that he had tested positive for methamphetamine because he had been around someone smoking the drug. He testified that, at the time of the trial, he was attending “Celebrate Recovery” and that he had a sponsor.
Discussion
I.
On appeal, the mother and the father first argue that the juvenile court erred in failing to hold a hearing within 72 hours of the initial removal of the child from the home of the parents. We note, however, that the initial order awarding DHR custody of the child is “no longer in effect; [that order was] supplanted by later orders in which the juvenile court expressly found the child to be dependent [and thereafter by the judgment terminating the parents’ parental rights]. Thus, ‘no relief ordered by this eourt can change’ the custody provisions of [the] initial order[ ], and, therefore, the argument pertaining to [that order] is moot.” M.B. v. R.P., 3 So.3d 237, 247 (Ala. Civ. App. 2008). We therefore dismiss the parents’ appeal to the extent that it challenges the initial pickup order removing the child from their custody.
II.
The mother and the father next argue that the juvenile court erred in appointing one attorney to represent both of them in the proceedings below. The record *366 shows that the juvenile court made the appointment on June 1, 2016. The juvenile court appointed the same attorney who had been previously appointed to represent both parents in the dependency proceedings, which had been commenced on October 13, 2015. That attorney represented the mother and the father through the end of the termination-of-parental-rights trial without objection. After the juvenile court entered the judgment terminating the mother’s and the father’s ■ parental rights, the juvenile court granted the attorney’s motion to withdraw from the case. The juvenile court then appointed a different attorney to represent the mother and the father in the postjudgment proceedings and on appeal.
The new attorney filed a postjudgment motion asserting, among other things, ineffective assistance of trial counsel. In the postjudgment motion, the new attorney argued, in pertinent part:
“[0]ne attorney represented both parents during the termination proceedings. In A.S.H. v. State Dep’t of Human Res., 991 So.2d 755, 757 (Ala. Civ. App. 2008), the Alabama Court of Civil Appeals found that one attorney could not adequately represent the interests of both parents, who had separated prior to the termination hearing. Id. In this case, the parents are still living together,- but given the extremely serious issues involved in an irreversible termination of parental rights, separate counsel would have been advisable to assure that both parents received full procedural and substantive due process.”
In the postjudgment motion, the new attorney asserted that the trial proceedings had been “infected with error,” but she did not allege any particular conflict of interest and did not point out any specific incident indicating that trial counsel had not effectively represented the mother and the father because of a conflict of interest. However, in a footnote, the new attorney explained that “a transcript of the case is not currently available at this time, and this motion is based on her best understanding of the case absent a transcript.”
On appeal, the new attorney, who continues to represent both parents, argues that the mother and the father had diverse interests at trial because
“the primary issue driving the , [petition to terminate parental rights] was the father’s previous ■ issue with illegal drugs.... The initial dependency petition did not make any specific allegations against the mother; caseworkers consistently testified that she was more interactive with the child than the father; and the caseworkers, expressed more concerns about the father’s alleged inability to control his temper during visitations.... Thus, there was a real and distinct- possibility of conflict- between the parents’ legal positions ■ that implicated the , need for separate attorneys.”
(Appellants’ brief, pp. 21-22.) Based on those allegations, the new attorney argues that the judgment should be reversed, that a new trial should be ordered, and that separate attorneys should be appointed to represent the mother and the father.
In this case, the mother and the father actually'raised in their postjudgment motion the argument that they had been deprived of effective assistance of counsel due solely to the fact that they were represented by the same attorney. However, the mother and the father- did not specifically argue- that they had received ineffective assistance of counsel because of a conflict between their interests. The mother and the father now raise that precise argument for the first time on appeal.
*367 An appellant who has raised an argument in the proceedings below is not necessarily “ ‘limited in the appellate court to the same reasons or arguments advanced in the lower court upon the matter or question in issue.’ ” Ex parte Knox, 201 So.3d 1213, 1216 (Ala. 2016) (quoting Beavers v. County of Walker, 645 So.2d 1365, 1372 (Ala. 1994), citing in turn Home Indem. Co. v. Reed Equip. Co., 381 So.2d 45, 50 (Ala. 1980)). However, an appellate court cannot consider an argument that differs from the argument made in the trial court. Id. “The function of an appeal is to obtain judicial review of the adverse rulings of a lower court; thus, it is a well-settled rule that an appellate court’s review is limited to only those issues that were raised before the trial court. Issues raised for the first time on appeal cannot be considered.” Beavers v. County of Walker, 645 So.2d at 1372 (citations omitted). In order to reverse the judgment of the juvenile court, this court would have to conclude that the juvenile court had erred in failing to determine that the claims and testimony at trial proved that the trial attorney for mother and the father had a conflict of interest that prevented the trial attorney from effectively representing both of them, even - though the juvenile court was never asked to consider those specific points. We cannot reverse the judgment on this ground.
Our conclusion does not leave the mother and the father without a remedy, - however. In Ex parte E.D., 777 So.2d 113, 115 (Ala. 2000), our supreme court noted that parents have a statutory right to effective assistance of counsel in a termination-of-parental-rights proceeding. Ordinarily, to be preserved for appeal, a claim of ineffective assistance of counsel must be raised in a motion for a new trial. If, due to-the unavailability of a trial transcript; a claim of ineffective assistance of counsel cannot be reasonably made within the 14-day period for filing a motion for a new trial as established in Rule 1(B), Ala. R. Juv. P., the parents may raise the claim in .a motion made pursuant to Rule 60(b)(6), Ala. R. Civ. P. In D.A. v. Calhoun County Department of Human Resources, 976 So.2d 502 (Ala. Civ. App. 2007), this court held that a parent who had failed to preserve an ineffective-assistance-of-coünsel argument for appellate review could nevertheless file a Rule 60(b)(6) motion for that purpose after the judgment was affirmed on appeal if the motion is ihade within a reasonable time.[1]
III.
Next, the, mother and the, father argue that the juvenile court erred in admitting certain exhibits into evidence because, they say» those exhibits constitute inadmissible hearsay as defined by Rule 801, Ala. R. Evid. We note, however, that, although the parents’ attorney objected to the introduction of those exhibits, the attorney objected on the basis of lack of personal knowledge, which is governed by Rule 602, Ala. R. Evid. “When the grounds for an objection are stated, this impliedly waives all other grounds for the objection to the evidence; and the objecting party cannot predicate error upon a ground not stated in the trial court, but raised for the first time on ■ appeal.” Nichols v. Southeast Prop. Mgmt., Inc., 576 So.2d 660, 662 (Ala. 1991) (citations omitted). Thus, we decline to address this argument on appeal.
ÍV.
The mother and the father next argue that the juvenile court exceeded its discre *368 tion in terminating their parental rights to the child because, they say, there was a lack of clear and convincing evidence in support of termination.
A judgment terminating parental rights must be supported by clear and convincing evidence, which is “ ‘ “Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.” ’ ” C.O. v. Jefferson Cty. Dep’t of Human Res., 206 So.3d 621, 627 (Ala. Civ. App. 2016) (quoting L.M. v. D.D.F., 840 So.2d 171, 179 (Ala. Civ. App. 2002), quoting in turn Ala. Code 1975, § 6-11-20(b)(4)).
“ ‘[T]he evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly ... establish the fact sought to be proved.’
“KGS Steel[, Inc. v. McInish,] 47 So.3d [749] at 761 [(Ala. Civ. App. 2006)].
“To analogize the test set out ... by Judge Prettyman [in Curley v. United States, 160 F.2d 229, 232-33 (D.C. Cir. 1947),] for trial courts ruling on motions for a summary judgment in civil cases to which a clear-and-convincing-evidence standard of proof applies, ‘the judge must view the evidence presented through the prism of the substantive evidentiary burden’; thus, the appellate court must also look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court’s weighing of the evidence, that would ‘produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion.’ ”
Ex parte McInish, 47 So.3d 767, 778 (Ala. 2008). This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear and convincing. See Ex parte T.V., 971 So.2d 1, 9 (Ala. 2007). When those findings rest on ore tenus evidence, this court presumes their correctness. Id. We review the legal conclusions to be drawn from the evidence without a presumption of cqrrectness. J.W. v. C.B., 68 So.3d 878, 879 (Ala. Civ. App. 2011).
A.
The parents specifically argue that there was not clear and convincing evidence presented indicating that they were unable or unwilling to care for the child.
Section 12-15-319(a), Ala. Code 1975, provides, in pertinent part:
“If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
[[Image here]]
*369 “(2) Emotional illness, mental illness, or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of a duration or nature as to render the parent unable to care for needs of the child.
[[Image here]]
“(7) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
“(8) That parental rights to a sibling of the child have been involuntarily terminated.”
In the present case, the evidence indicates that the parental rights of the mother and the father had previously been terminated to another child in 2012 as a result of the mental instability of the mother and the father. § 12-15-319(a)(2) & (8). Haynes testified that the parents’ behavior at the time of the trial was similar to their behavior at the time of the 2012 termination, and the psychological reports confirmed that both the mother and the father still have limited mental abilities. § 12—15—319(a)(2). Furthermore, the evidence indicated that the father has a long history of drug use, including a long period of sobriety followed by a recent relapse in 2015. § 12-15-319(a)(2). The evidence also indicated that the father had not attended “Celebrate Recovery” consistently as recommended. The evidence indicated further that the parents had ongoing problems with domestic violence and that, despite the father’s submitting to anger-management counseling, he continued to have angry outbursts. § 12-15-319(a)(7). Based on the foregoing, the juvenile court could have properly concluded that the parents are unable or unwilling to care for the child.
The parents specifically argue that this case is analogous to C.H. v. Franklin County Department of Human Resources, 171 So.3d 32 (Ala. Civ. App. 2015). In that case, this court held that there had not been clear and convincing evidence presented in support of termination of the parents’ parental rights because there had been little evidence presented other than evidence that the parents’ parental rights to other children had been terminated. C.H., 171 So.3d at 37. This court noted that the parents’ visits with the child were appropriate and that there was no evidence of recent drug use. Id. In the present case, however, the evidence indicated that the parents’ mental instability, the cause of the previous termination of their parental rights, continued at the time of the trial. Furthermore, the evidence indicated that the parents’ visits with the child had been inappropriate. Therefore, we conclude that this case is distinguishable from C.H.
B.
The mother and the father finally argue that termination of their parental rights was not in the best interest of the child and that maintaining the status quo was a viable alternative to termination.
“‘Our supreme court has held that a juvenile court should maintain foster care ... without terminating parental rights when a child shares a beneficial emotional bond with a parent and the custodial arrangement ameliorates any threat of harm presented by the parent.’ ” B.M. v. Jefferson Cty. Dep’t of Human Res., 183 So.3d 157, 160 (Ala. Civ. App. 2015) (quoting B.A.M. v. Cullman Cty. Dep’t of Human Res., 150 So.3d 782, 786 (Ala. Civ. App. 2014)).
In the present case, however, the evidence indicates that the mother and the father had acted inappropriately at visitations and that the child had been negative *370 ly affected by his visitations with the parents.
... “We have held that, ‘at some point, [a child’s] need for permanency must outweigh repeated efforts by DHR to rehabilitate’ a parent. N.A. v. J.H., 571 So.2d 1130, 1134 (Ala. Civ. App. 1990) (citing [former] § 26-18-7(b)(4), Ala. Code 1975). Further, ‘[i]n R.L.B. y. Morgan County Department of Human Resources, 805 So.2d 721, 725 (Ala. Civ. App. 2001), this court held that maintaining a child in foster care indefinitely is not a viable alternative to termination of parental rights.’ T.G. v. Houston County Dep’t of Human Res., [39] So.3d [1146, 1152] (Ala. Civ. App. 2009)....”.
“ ‘[Montgomery Cnty. Dep’t of Human Res. v. W.J.,] 34 So.3d [686,] 693 [ (Ala. Civ. App. 2009) ].’
“Jefferson Cnty. Dep’t of Human Res. v. L.S., 60 So.3d 308, 316 (Ala. Civ. App. 2010).’’
B.M., 183 So.3d at 161.
Because of the parents’ long history with DHR and their inability to change their circumstances despite DHR’s past assistance, we cannot conclude that- the juvenile court exceeded its discretion in determining that maintaining the child in foster care was not a viable alternative to' terminating the parental rights of the mother and the father.
Conclusion
Based on the foregoing, the appeal is dismissed to the extent the mother and the father argue that the juvenile court erred in failing to hold a hearing within 72 hours of the initial removal of the child from the home of the parents. With regard to all other issues, we affirm the juvenile court’s judgment.
APPEAL DISMISSED IN PART; AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concúr.

. While an appeal is pending, an appellant can file a Rule 60(b) motion only with leave of the appellate court. See Rule 60(b), Ala. R. Civ. P.; and Jenkins v. Covington, 939 So.2d 31, 34 (Ala. Civ. App. 2006) (holding that appellant must obtain leave from appellate court in order to file Rule 60(b) motion in trial court when appeal is pending).