The plaintiff, Randolph C. Marks, d/b/a Historic Architectural Resource Planning, appeals from a judgment entered on a jury verdict for the defendant, Intergraph Corporation, Inc. ("Intergraph"). We affirm.
Marks, an architect, sued Intergraph in 1993, seeking compensatory and punitive damages based on allegations of fraud, breach of contract, and breach of warranty in connection with his purchase and/or use of certain Intergraph computer equipment and software, including Intergraph "Engineering Modeling System" ("EMS") *Page 1067 
software and Intergraph "Microstation" software and in connection with his agreement to purchase a developmental software 3D design system called "Master Architect." Marks alleged that the EMS and Microstation software he obtained from Intergraph had not performed as represented and that his architectural practice had been damaged as a result. Marks also alleged that Intergraph had misled him with respect to its development of the "Master Architect" software. Marks signed a "Quotation" or purchase order for the "Master Architect" software; however, because it was still in the developmental stages, he was not required to pay for it until it was actually delivered. Because of certain problems with the software that Intergraph said it could not overcome, Intergraph notified Marks in writing in 1990 that it had discontinued development of its "Master Architect" software. Intergraph had allowed Marks to use its EMS software free of charge while its "Master Architect" software was still in development. Marks alleged that Intergraph's failure to deliver the "Master Architect" software had resulted in damage to his architectural practice.
Intergraph took the position that it had fully informed Marks that its "Master Architect" software was in the developmental stages and that its EMS software and Microstation software were not totally suitable for his practice. Intergraph maintained that it had fully cooperated with Marks, even to the point of allowing Marks to use its EMS software free of charge while its "Master Architect" software was in development, and that any losses Marks may have suffered in his practice were due primarily to three things: 1) his own inability to satisfy his clients; 2) the changing marketplace; and 3) the inefficient way in which he utilized the EMS software. Intergraph also raised the statute of limitations as an affirmative defense to one of Marks's fraud claims. That defense turned on whether Marks knew or should have known, more than two years before filing his complaint, see Ala. Code 1975, § 6-2-38(l) and § 6-2-3, about Intergraph's discontinuation of the development of its "Master Architect" software and on whether Intergraph had fraudulently induced Marks to delay filing his action. Marks maintained that Intergraph was estopped as a matter of law from raising the statute-of-limitations defense because, Marks argued, Intergraph had fraudulently induced him not to sue. The trial court, concluding that the evidence was in dispute, instructed the jury on Intergraph's statute-of-limitations defense. The case was tried over a 12-day period. After the jury returned the verdict for Intergraph, Marks moved for a new trial on various grounds. The trial court denied Marks's motion. Marks appealed.
Marks presents the following issues:
 1) Whether Marks was entitled to a new trial on the ground that the verdict was against the weight of the evidence;
 2) Whether Marks was entitled to a new trial on the ground that the trial court should not have instructed the jury on the statute-of-limitations defense; and
 3) Whether Marks was entitled to a new trial on the ground that Intergraph impermissibly interjected Marks's wealth as an issue in the case.
After carefully examining the briefs and the record, we conclude that the trial court properly denied Marks's motion for a new trial.
 Weight of the Evidence
As to Marks's contention that the jury's verdict was against the weight of the evidence, we note that we will not reverse an order denying a motion for a new trial on this ground unless, after allowing all reasonable presumptions of its correctness, we conclude that the preponderance of the evidence against the verdict is so decided as to clearly convince us that the verdict was wrong and unjust. See Foremost Ins. Co. v. Parham, 693 So.2d 409
(Ala. 1997), citing Dorton v. Landmark Dental Care ofTuscaloosa, P.C., 577 So.2d 425 (Ala. 1991). *Page 1068 
The purpose of a jury trial is to resolve disputes in the evidence. One of a jury's primary functions is to assess the credibility of witnesses. The record in this case is voluminous. Both Marks and Intergraph introduced substantial evidence in support of their respective claims and defenses. We see no useful purpose in detailing this conflicting evidence. Suffice it to say that Marks's evidence is not so much more credible and convincing to us than Intergraph's evidence that it clearly indicates that the jury's decision was wrong or unjust.
 Statute-of-Limitations Defense
The trial court, over Marks's objection, submitted Intergraph's statute-of-limitations defense to the jury. As previously noted, that defense pertained to Marks's claims that Intergraph had misrepresented to him that its "Master Architect" software would eventually be delivered and that it would perform as represented. Marks introduced evidence indicating that Intergraph told him in 1989 that the development of its "Master Architect" software was on "extended hold" but that development was expected to be completed by the end of 1989. Marks also introduced evidence indicating that Intergraph made its EMS and Microstation software available to him as an "interim solution" until the problems with the "Master Architect" software could be resolved and that Intergraph, knowing that he might take legal action, had required him to execute certain releases as a condition to its continuing to do business with him. Marks argued that Intergraph secured the releases through misrepresentations and that he was, therefore, fraudulently induced not to sue earlier. Intergraph introduced evidence indicating that it had given Marks written notice in July 1990 that its "Master Architect" software was being "discontinued." Ruth Hardy, regional operations manager for Intergraph, wrote the following in a July 1990 letter to Marks:
 "Please be advised that since your purchase of Master Architect (M-ARCH) Software Package, Part No. SEAE104, the Intergraph Corporation Price List has been changed to show this product discontinued. It has been replaced by Project Architect (SEAE109), Project Modeler (SEAE140), and Model View (SEAE118)."
Marks testified that he did not understand this letter to affirmatively state that development of the "Master Architect" software was being discontinued. He testified, instead, that he thought the letter meant the product would no longer be offered for sale.
We agree with the trial court that a fact question was presented both as to whether Marks knew or should have known more than two years before he filed his complaint in 1993 that he would not be receiving the "Master Architect" software and as to whether Intergraph had fraudulently induced Marks not to file an action before the running of the statutory limitations period. The court properly presented the statute-of-limitations defense to the jury.
 Interjection of the Issue of Marks's Wealth
Reference to a party's wealth or poverty is generally not permitted under Alabama law. However, this general exclusionary rule does not apply if evidence of the party's wealth or poverty is relevant to a material issue in the case. See Ford v. Canton,530 So.2d 217 (Ala. 1988). It is generally recognized that a party may inquire into an opposing party's wealth on cross-examination or in rebuttal if that opposing party "opens the door" to such an inquiry. See City of Gulf Shores v. HarbertInt'l, 608 So.2d 348 (Ala. 1992); see, also, Charles W. Gamble,McElroy's Alabama Evidence, § 189.05(2)(c) (5th ed. 1996), and the cases cited therein. We have examined the instances where Marks says Intergraph improperly introduced evidence of, or commented on, his financial status. We conclude that the trial court did not err in rejecting Marks's argument for a new trial on this ground. The *Page 1069 
evidence and the comments complained of, to the extent they could be considered as referring, directly or indirectly, to Marks's financial status, were, for the most part, proper to rebut Marks's argument that Intergraph had caused him to be unable to make a living from his architectural practice.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
Hooper, C. J., and Maddox, Cook, See, Lyons, Brown, and Johnstone, JJ., concur.