I concur in the result. As for the orders dealing with products other than the product that is the basis of the action, I am not persuaded that the discovery of this information is "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Ala.R.Civ.P. Until some independent basis exists for Kaylor's speculation in his fraud claim — pleaded without the specificity with which fraud claims should be pleaded — that other employees might have had similar arrangements and might have been fraudulently denied compensation to which they were entitled, the connection between this action and the requested discovery is not reasonable. Further, Kaylor's contention that the information he seeks is discoverable because it relates to his inability to claim commissions on "house accounts" also fails, because his complaint seeks a commission for sales not classified as "house accounts." Again, the connection is not reasonable.
Turning to the minutes of the board, the affidavit of Ed Crowell, vice president of administration for Miltope, described the minutes as follows:
 "Miltope Corporation holds annual meetings of its Board of Directors and other meetings as provided in the company's By-Laws or as may be required or called. At these Board of Directors meetings, internal information relating to Miltope Corporation's business strategies and plans as well as the financial operations and condition of the company are discussed. No personnel matters are discussed in these Board meetings.
 "The information discussed includes how Miltope Corporation will operate and compete in the competitive bidding environment of military contracting. The Directors discuss (1) information that is intended for use in the military contracting business, (2) methods, techniques and processes relating to competitive bidding on military contracts, (3) information that is not publicly known[,] as Miltope Corporation is not a publicly traded entity and the information is unique to Miltope's methods, techniques and processes for engaging in business in the highly competitive military contracting industry, (4) information relating to Miltope's operations, strategic plans and bidding processes that cannot be ascertained from publicly available information, (5) information that is and has always been maintained confidentially by Miltope, and (6) information which has significant economic value to Miltope in the form of military contracts.
 "The Board of Directors meetings of Miltope Corporation are private and confidential, and the minutes of the meetings are and always have been maintained confidentially and are not open to general review. The disclosure of these internal minutes would help competitors of Miltope Corporation compete against Miltope Corporation in bids future [sic] for military contracts. As *Page 647 
 such, this information is of substantial economic value to Miltope Corporation, and the disclosure of this information would have a substantial and detrimental impact on the financial operations and condition of the company."
The requisite reasonable connection between the type of information described by Crowell as being included in the minutes and the subject matter of this lawsuit is lacking.
Finally, the information concerning gross and net profit is not reasonably calculated to lead to admissible evidence when Kaylor is claiming a percentage of gross bookings. Information as to net worth is not generally admissible. See Charles W. Gamble, McElroy's AlabamaEvidence § 189.05(1) (5th ed. 1996). Kaylor's suggestion that profit levels are admissible to show motive suggests that some rational basis exists to contradict the axiomatic conclusion that businesses are operated to make a profit. Allowing discovery of profits to develop evidence of motive at this stage of the proceedings would circumvent Alabama's long-standing prohibition against the admissibility of evidence of a party's wealth or poverty. See Marks v. Intergraph Corp.,740 So.2d 1066 (Ala. 1999).
Harwood, J., concurs.