SEE, Justice.
 

 Jennifer Lynn Jordan, a minor, by and through her mother and next friend, Amanda Jordan, appeals from the trial court’s denial of her motion for a new trial in a tort action resulting from an automobile accident. We affirm.
 

 Facts and Procedural History
 

 On March 30, 2004, in Orange Beach, Jennifer, who was then 14 years old, was a passenger in an automobile driven by Amanda Calloway (“Amanda”), who was then 16 years old. The automobile driven by Amanda and owned by her mother, Robin Calloway, struck the rear end of a truck that was stopped at a traffic signal. Jennifer, who was sitting in the front passenger seat, injured her knee when it struck the dashboard during the collision. At the time of the collision, the truck had been sitting at the traffic signal for 15 to 30 seconds and the road was straight, with no obstructions between Amanda and the truck. Jennifer did not receive any medical treatment at the scene of the accident, but two days later she complained of knee pain and went to her doctor. Jennifer’s knee pain worsened, and in June 2005, Jennifer underwent the first of three surgeries; she had the second surgery in September 2005 and the third in June 2006. Jennifer’s mother, Amanda Jordan (“Jordan”), as Jennifer’s next friend, filed this action on Jennifer’s behalf against Robin Calloway (“Calloway”), individually and as personal representative of the estate of Amanda,
 
 [1]
 
 alleging that Calloway had wantonly and/or negligently entrusted the vehicle to Amanda, and that Amanda had wantonly operated it. Calloway filed a motion in limine in the trial court to prevent Jordan from entering Amanda’s medical records into evidence,
 
 [2]
 
 arguing that the records had not been properly authenticated and that they lacked probative value. Jordan ai’gued that the records were authenticated because they were produced by Calloway in response to a discovery
 
 *313
 
 request. The trial court granted the motion in limine to exclude the medical records, agreeing with Calloway that the records were not properly authenticated and that they lacked probative value.
 

 After opening statements, Jordan moved the court to reconsider the motion in li-mine, arguing that Calloway had “opened the door” for the medical records to be admitted into evidence by discussing Amanda’s medical history in her opening statement, specifically the dimensions and extent of the brain tumor that had been discovered in January 2004. Calloway responded that there was nothing in the opening statement that could not be testified to by her. The trial court, however, allowed Amanda’s medical records from the University of South Alabama Medical Center to be admitted into evidence because “they are properly authenticated,” but it continued to exclude her records from Nemours Children’s Clinic, Alabama Orthopedic Clinic, and the University of Alabama Pediatric Oncology Clinic.
 

 During the trial, Jordan testified, in support of Jennifer’s mental-anguish claim, that the medical bills from Jennifer’s knee surgeries had placed Jordan’s family in a precarious financial condition and that they could not afford to pay both Jennifer’s medical bills and their regular household expenses. During cross-examination, Calloway’s attorney asked Jordan whether she had recently purchased a new car for Jennifer. Both parties were subject to a motion in limine preventing them from disclosing a pretrial insurance settlement between Jordan and Calloway’s automobile-liability-insurance carrier. Jordan had paid for the car, at least in part, with the proceeds from the settlement with the insurance carrier. The trial court allowed the question over Jordan’s objection and refused to allow Jordan to mention the insurance settlement in her answer.
 

 At the close of Jordan’s case, Calloway moved for a judgment as a matter of law (“JML”) on Jordan’s claims. The trial court entered a JML as to the wanton-entrustment claim against Calloway, but it denied a JML as to the negligent-entrustment claim against Calloway and as to the wantonness claim against Amanda’s estate. The jury returned a verdict in favor of Calloway on both the negligent-entrustment claim and the wantonness claim. Jordan moved for a new trial. The trial court denied the motion, and Jordan now appeals.
 

 Issues
 

 Jordan raises three issues in her appeal: (1) whether the trial court erred in excluding Amanda’s medical records, other than her records from the University of South Alabama Medical Center; (2) whether the trial court erred in allowing cross-examination of Jordan as to the purchase of the new car for Jennifer; and (3) whether the trial court erred in entering a JML on Jordan’s wanton-entrustment claim.
 

 Standard of Review
 

 “ ‘The decision to grant or to deny a motion for a new trial rests within the sound discretion of the trial court.’
 
 Bowers v. Wal-Mart Stores, Inc.,
 
 827 So.2d 63, 73 (Ala.2001);
 
 Hill v. Cherry,
 
 379 So.2d 590 (Ala.1980). ‘A denial of a motion for a new trial strengthens the presumption of correctness afforded a jury verdict.’
 
 Bowers,
 
 827 So.2d at 73. This Court will not disturb the decision of the trial court ‘unless the verdict is against the preponderance of the evidence or is clearly wrong or unjust.’
 
 Bowers,
 
 827 So.2d at 73.”
 

 Keibler-Thompson Corp. v. Steading,
 
 907 So.2d 435, 440 (Ala.2005).
 

 “The standard applicable to a review of a trial court’s rulings on the admission
 
 *314
 
 of evidence is determined by two fundamental principles. The first grants trial judges wide discretion to exclude or to admit evidence. ‘The test is that the evidence must ... shed light on the main inquiry, and not withdraw attention from the main inquiry.’
 
 Atkins v. Lee,
 
 603 So.2d 937 (Ala.1992) (citing
 
 Ryan v. Acuff,
 
 435 So.2d 1244 (Ala.1983)). The second principle ‘is that a judgment cannot be reversed on appeal for an error unless ... it should appear that the error complained of has probably injuriously affected substantial rights of the parties.’
 
 Atkins,
 
 603 So.2d at 941.”
 

 Wal-Mart Stores, Inc. v. Thompson,
 
 726 So.2d 651, 655 (Ala.1998).
 

 “In reviewing a trial court’s ruling on a motion for a judgment as a matter of law, we apply the same standard the trial court applied initially in granting or denying the motion.
 
 Palm Harbor Homes, Inc. v. Crawford,
 
 689 So.2d 3 (Ala.1997). The nonmovant must present substantial evidence to withstand a motion for a judgment as a matter of law.
 
 Palm Harbor Homes; West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). When reviewing a ruling on a motion for a judgment as a matter of law, this Court views the evidence in the light most favorable to the nonmovant, entertaining any reasonable inferences that the jury would have been free to draw.
 
 Carter v. Henderson,
 
 598 So.2d 1350 (Ala.1992). This Court indulges no presumption of correctness as to the trial court’s rulings on questions of law.
 
 Ricwil, Inc. v. S.L. Pappas & Co.,
 
 599 So.2d 1126 (Ala.1992).”
 

 Keibler-Thompson Corp.,
 
 907 So.2d at 440.
 

 Analysis
 

 I.
 

 Jordan’s first argument is that the trial court improperly excluded Amanda’s medical records as not being properly authenticated. In
 
 Alabama Power Co. v. Tatum,
 
 293 Ala. 500, 508, 306 So.2d 251, 258 (1975), this Court held:
 

 “It is an established rule of evidence in this state that a party is relieved from the necessity of proving the authenticity of a document which he offers in evidence when such document is produced by the adverse party on notice or motion, and the party producing the document is a party to the instrument or claims a beneficial interest thereunder.”
 

 Calloway, however, argues that
 
 Tatum
 
 should be read to include only those documents created by the party to the action. We need not address this question, however, because this Court will not reverse the trial court’s decision to deny a motion, including a motion for a new trial, unless, “after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.” Rule 45, Ala. R.App. P. The trial court granted Calloway’s motion in limine to exclude all Amanda’s medical records on the grounds, first, that the records were not properly authenticated and, second, that the records were not probative.
 

 After Calloway’s opening statement, Jordan moved the trial court to reconsider its ruling excluding the medical records. She argued that in her opening statement Calloway had “opened the door” to admitting the records by discussing Amanda’s medical condition in general, by mentioning the specific size of her brain tumor, and by comparing Amanda to a normal 16-year-old. The trial court concluded that the medical records from the University of South Alabama Medical Center had been “authenticated” and were therefore admissible. Those records contained the CT
 
 *315
 
 scan that had been performed on Amanda, showing the size and location of the brain tumor she was suffering from at the time of the accident. The trial court continued to exclude Amanda’s remaining medical records.
 
 [3]
 

 Jordan argues that under
 
 Holly v. Huntsville Hospital,
 
 865 So.2d 1177 (Ala.2008), the trial court’s decision to exclude the medical records is reversible error. In
 
 Holly,
 
 after the defendant doctor testified that he had not breached the standard of care, the trial court would not allow the plaintiffs expert witnesses to testify as to the standard of care. This prevented the plaintiffs from responding to the doctor’s testimony as to the standard of care and as to whether he had breached it. On appeal, the doctor argued that the error in not allowing the plaintiffs experts to testify as to the standard of care was harmless because, he argued, the plaintiffs were allowed to introduce sufficient expert testimony to present a prima facie case as to whether the defendant was liable, and, therefore, it was not prejudicial to exclude the expert witnesses’ testimony on the particular issue of the standard of care. This Court stated that the exclusion of evidence is reversible error if the evidence “ ‘ “goes to settle an ultimate issue in the case and ... is different from the testimony given by the witnesses who have already testified.” ’ ” 865 So.2d at 1188 (quoting
 
 State ex rel. Pryor v. Cupps,
 
 770 So.2d 1111, 1112 (Ala.Civ.App.2000), quoting in turn C. Gamble,
 
 McElroy’s Alabama Evidence
 
 § 10.6 at 34 (5th ed.1996)).
 

 This case is distinguishable from
 
 Holly
 
 because in
 
 Holly
 
 the excluded evidence went to the doctor’s liability and directly contradicted the doctor’s own testimony concerning his breach of the standard of care. In the case before us, Callo-way testified and was cross-examined on the information contained in the medical records. The excluded medical records would have been cumulative in that they would not have contradicted or differed from Calloway’s testimony. “The exclusion of admissible evidence does not constitute reversible error where the evidence ‘would have been merely cumulative of other evidence of the same nature, which was admitted.’ ”
 
 Houston v. State,
 
 565 So.2d 277, 281 (Ala.Crim.App.1990) (quoting
 
 Ex parte Lawson,
 
 476 So.2d 122, 122 (Ala.1985)). Therefore, the trial court’s error, if any, in finding that the excluded medical records were not properly authenticated was not prejudicial to Jordan, and we affirm the trial court’s denial of Jordan’s motion for a new trial on this issue.
 
 See
 
 Rule 45, Ala. R.App. P.
 

 II.
 

 Jordan argues that by allowing Calloway to ask on cross-examination whether Jordan had purchased a new car, the trial court permitted inadmissible evidence regarding Jordan’s general wealth or poverty.
 
 See Marks v. Intergraph Corp., Inc.,
 
 740 So.2d 1066, 1068 (“Reference to a party’s wealth or poverty is generally not permitted under Alabama law.”). However, in support of Jennifer’s mental-anguish claim, Jordan testified on direct examination that she and her family had difficulty paying Jennifer’s medical bills; that the family had to choose between paying the medical bills and buying
 
 *316
 
 groceries; and that she had had to beg creditors for payment plans allowing her to make payments as low as $10 per month.
 
 [4]
 

 Marks,
 
 however, stands not only for the general proposition that a reference to a party’s wealth or poverty is not permitted, but also for the proposition that “[i]t is generally recognized that a party may inquire into an opposing party’s wealth on cross-examination or in rebuttal if that opposing party ‘opens the door’ to such an inquiry.” 740 So.2d at 1068. Calloway explains that her question regarding Jordan’s purchase of the car for Jennifer was an attempt to refute Jordan’s prior testimony regarding her family’s inability to pay Jennifer’s medical bills. Thus, Callo-way’s question regarding Jordan’s purchase of an automobile was a direct response to Jordan’s mental-anguish claim, which arose out of the family’s inability to pay its bills.
 

 Jordan further argues that because the money used to purchase Jennifer’s car came, at least in part, from a settlement with Calloway’s insurer, the question allowed the introduction of evidence of an insurance settlement. Jordan notes that “[t]he principle that reference to indemnification or insurance of an opposing party is highly prejudicial and grounds for a mistrial or a new trial is firmly established.”
 
 Cook v. Anderson,
 
 512 So.2d 1310, 1311 (Ala.1987). However, in pursuing that line of questioning, Calloway made no mention of the insurance settlement.
 

 Jordan alleges that the trial court compounded its error by not allowing Jordan to disclose in her answer the source of the money she used to purchase the ear and that she was then prejudiced because the jury was allowed to impermissibly consider the allegedly irrelevant fact of Jordan’s purchase of a new car for Jennifer. Callo-way did not mention the insurance settlement or infer its existence in asking her question. Jordan argues that Calloway “opened the door” to disclosing the insurance settlement by asking the question regarding the purchase of the car. That question, however, was relevant to the substantive issue whether Jennifer’s medical bills were the cause of the family’s financial difficulties, and that issue was introduced by Jordan’s testimony on direct examination.
 

 For the foregoing reasons, we hold that the trial court did not exceed its discretion by allowing Calloway to ask Jordan about the purchase of the new car or by preventing Jordan from discussing the insurance settlement in her answer, and, as to this ground, we affirm the trial court’s denial of Jordan’s motion for a new trial.
 

 III.
 

 Finally, Jordan argues that she is entitled to a new trial because, she says, the trial court erred in entering a JML in favor of Calloway on Jordan’s wanton-entrustment claim. Wantonness is “‘the conscious doing of some act or the omission of some duty, while knowing of
 
 *317
 
 the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.’ ”
 
 Barker v. Towns,
 
 747 So.2d 907, 907 (Ala.Civ.App.1999) (quoting
 
 Alfa Mutual Ins. Co. v. Roush,
 
 723 So.2d 1250, 1256 (Ala.1998)). In order to establish wanton en-trustment, Jordan must show that Callo-way entrusted the automobile to Amanda while knowing that that entrustment would likely or probably result in injury to others.
 

 Jordan argues that she presented substantial evidence of wantonness by showing that Calloway was aware that Amanda was suffering from terminal brain cancer at the time she entrusted her with a vehicle and that, after the accident, Calloway allegedly stated that she should not have let Amanda drive “during spring break.” First, Jordan did not present any evidence indicating that the accident was causally related to Amanda’s medical condition, and none of those present at the accident scene, including Jennifer, gave any indication that they had seen anything that would suggest that Amanda’s cancer, or its symptoms, had caused the accident.
 

 Second, Calloway’s statement that she should not have allowed her 16-year-old daughter to drive her vehicle during spring break is not substantial evidence indicating that Calloway knew that Amanda was incompetent to drive and that she was conscious that injury to others would likely or probably result if she let Amanda drive her vehicle. “ ‘Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ ”
 
 Moon v. Pillion,
 
 2 So.3d 842, 845 (Ala.2008) (quoting
 
 Catrett v. Baldwin County Elec. Membership Corp.,
 
 996 So.2d 196, 199 (Ala.2008), quoting in turn
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989)). Jordan did not present any evidence indicating that Calloway’s statement regarding not allowing Amanda to drive during spring break was somehow related to Amanda’s medical condition.
 
 [5]
 

 For the foregoing reasons, we conclude that the trial court did not err in entering a judgment as a matter of law on Jordan’s wanton-entrustment claim, and we affirm the trial court’s judgment on this issue.
 

 Conchision
 

 Jordan has not demonstrated that the trial court committed reversible error or that it exceeded its discretion in denying her motion for a new trial. Therefore, we affirm the trial court’s judgment.
 

 AFFIRMED.
 

 COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
 

 [1]
 

 . Amanda, who had a history of cancer, died from cancer in April 2004.
 

 [2]
 

 . Amanda was first diagnosed with cancer in her right leg and hip in 2000. After treatment, Amanda’s doctors thought she was free of cancer, but in July 2003 Amanda was diagnosed with a cancerous tumor on her skull, which was surgically removed. In January 2004, Amanda was diagnosed with an inoperable cancerous brain tumor, and she died in April 2004.
 

 [3]
 

 . Those excluded medical records contained treatment information regarding (1) seizures Amanda had occasionally suffered from, the last one having occurred approximately four years before the accident; (2) Amanda’s earlier bouts with cancer; and (3) Amanda’s final treatment for brain cancer, which took place two weeks after the accident and during which she died.
 

 [4]
 

 . Jordan claims in her brief that her testimony on direct examination as to the difficulty in paying bills went only to establishing the amount of Jennifer’s medical bills; however, the record shows that Jordan offered the testimony in support of Jennifer's mental-anguish claim. When Calloway objected to the direct-examination testimony on the ground that it interjected Jordan's general wealth or poverty, Jordan responded that “the jury has to hear what position that family was in” to determine whether Jennifer had a reasonable basis for her claim. Thus, Jordan’s testimony went to the impact of the medical bills on Jennifer, not to the amount of those bills.
 

 [5]
 

 . It would be speculative to conclude that by her comment Calloway was speaking of Amanda’s medical condition, and "[ejvidence which affords nothing more than mere speculation, conjecture, or guess is insufficient to warrant submission of a case to a jury.”
 
 Nelson v. Dunaway,
 
 536 So.2d 955, 956 (Ala.Civ.App.1988).