PER CURIAM.
B.A.M. (“the mother”) appeals from a judgment entered by the Cullman Juvenile Court (“the juvenile court”) terminating her parental rights to E.A. (“the child”). We reverse.
On July 18, 2012, the Cullman County Department of Human Resources (“DHR”) petitioned the juvenile court to terminate the parental rights of the mother and W.H.A. (“the father”). On August 13, and September 11, 2013, the juvenile court'conducted a hearing on DHR’s petition. The father, who was in prison, did not attend the hearing, and his parental rights to the child are not at issue in this appeal. On September 17, 2013, the juvenile court entered its judgment terminating the mother’s parental rights. On October 1, 2013, the mother filed a postjudgment motion; on that same date, the mother filed a notice of appeal. On October 2, 2013, the juvenile court denied, without a hearing, the mother’s postjudgment motion, and her notice of appeal was deemed filed on that date. See Rule 4(a)(5), Ala. R.App. P.
On appeal, the mother first argues that the juvenile court erred in denying her postjudgment motion without a hearing. However, the record indicates that the mother did not request a hearing on her postjudgment motion. As a result, she waived her right to a hearing. See Greene v. Thompson, 554 So.2d 376, 381 (Ala.1989); and Frederick v. Strickland, 386 So.2d 1150,1152 (Ala.Civ.App.1980).
*784 The mother next argues that the juvenile court erred in finding grounds for termination of her parental rights. The statutory grounds for terminating parental rights, i.e., for a finding that the child is dependent, are set forth in § 12-15-319, Ala.Code 1975, which provides, in pertinent part:
“(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.”
Pursuant to the terms of that statute, a juvenile court may terminate a parent’s parental rights only if clear and convincing evidence shows that the parent is currently unable to discharge his or her parental duties properly, see D.O. v. Calhoun Cnty. Dep’t of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003), and that the conduct or condition that prevents the parent from assuming or exercising proper care of the child will likely persist in the foreseeable future. See D.M. v. Walker Cnty. Dep’t of Human Res., 919 So.2d 1197, 1211 (Ala.Civ.App.2005).
From the substantial evidence presented in the record, the juvenile court reasonably could have been clearly convinced that the mother lacked the ability to meet the special needs of the child. See Ex parte Mclnish, 47 So.3d 767, 774 (Ala.2008) (explaining the standard of appellate review when the clear-and-convincing-evidence standard applies at trial). The evidence established that the child had been diagnosed with “Attention Deficit Hyperactivity Disorder,” “Oppositional Defiance Disorder,” and autism, and that his serious behavioral issues require a highly structured facility equipped to handle his aggressive behaviors and to monitor and dispense his many medications. According to multiple witnesses, the child’s emotional and behavioral issues, which include hitting, kicking, throwing items, and running away, often had required more than one aide to ensure the child’s safety and the safety of those around him, and the severity of those issues had led multiple professional institutions and foster homes to remove the child from their programs. The child has been diagnosed with a borderline low IQ that requires him to attend special-education classes and with a speech impediment that requires speech therapy. During DHR’s involvement with him, the child had been hospitalized on multiple occasions to regulate his medications and to gain control of his behaviors.
Efforts to keep the child in the home with the mother failed after she repeatedly exhibited an inability to independently control the child, her husband and his mother expressed concerns about the child being in the home, and some of the child’s prescription medication went missing. A family counselor testified that, after working with the mother for 14 months, she found the mother “very cooperative but lacking in skills.” The counselor testified that, despite her own experience, the child’s medication regimen was complicated even for her and that she had concerns about whether the mother, who displayed limited reading ability, could properly administer the child’s medications without help. The counselor testified that it would not be safe for the mother to be alone with the child for any length of time and that she did not believe the mother has sufficient family support to resume care of the child in her home.
*785 Nevertheless, we agree with the mother that the juvenile court erred in terminating her parental rights. As the mother lastly argues, parental rights may not be terminated, even if sufficient statutory grounds exist, when some less drastic measure might be employed to preserve the parental relationship without harming the interests of the child. See Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990).
“Parents and their children share a fundamental right to family integrity that does not dissolve simply because the parents have not been model parents. Santosky v. Kramer, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). That due-process right requires states to use the most narrowly tailored means of achieving the state’s goal of protecting children from parental harm. Roe v. Conn, 417 F.Supp. 769, 779 (M.D.Ala.1976). Thus, if some less drastic alternative to termination of parental rights can be used that will simultaneously protect the children from parental harm and preserve the beneficial aspects of the family relationship, then a juvenile court must explore whether that alternative can be successfully employed instead of terminating parental rights. Id.”
T.D.K. v. L.A.W., 78 So.3d 1006, 1011 (Ala.Civ.App.2011).
The evidence presented to the juvenile court undisputably established that the mother had raised the child continuously since his birth until he was removed from her care at the age of seven. It is undisputed that the mother and the child share a strong bond and that the mother has maintained constant contact and communication with the child while he has been in the care of others. Multiple witnesses agreed that it would- be in the child’s best interest and necessary for his mental health that he and the mother continue to maintain their relationship and communication, even if he is not in her primary custody or care. Multiple witnesses further testified that the child suffers significant emotional distress when his visits with the mother end.
In such cases, this court has held that terminating parental rights could do more harm than good. See, e.g., CM. v. Tuscaloosa Cnty. Dep’t of Human Res., 81 So.3d 391 (Ala.Civ.App.2011). Juvenile courts therefore must consider the benefit to the child of maintaining custody with some third party with parental visitation as opposed to terminating parental rights solely to remove obstacles to the adoption of the child. C.M., 81 So.3d at 397 (citing D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 95 n. 17 (Ala.Civ.App.2003) (plurality opinion)). -
In this case, maintaining visitation with the mother would not present any risk of harm to the child. The record discloses no evidence to suggest that the mother has ever abused or neglected the child. Throughout DHR’s involvement, the mother did all that was asked of her, and she appears to have done all that she could to care for the child and to meet his needs. As the mother correctly asserts, numerous professionals and foster parents have been equally unable to meet the child’s needs, and the child has required hospitalization on several occasions while in DHR’s custody. The psychologist who evaluated the child opined that he could see nothing that the mother had done to cause or exacerbate the child’s diagnoses.
Furthermore, the record discloses no benefit the child will receive from terminating the mother’s parental rights. The child’s most recent DHR caseworker testified that, if the mother’s parental rights were terminated, the child would be added to the State’s adoption registry in the hopes of finding an adoptive parent. She *786 acknowledged that DHR had no identified resources for the child at the time of the termination hearing and that it would be difficult to find adoptive parents for him. According to the caseworker, DHR had not determined where the child would be placed long-term and she was still searching for an appropriate therapeutic foster home for him. It appears that finding an appropriate placement for the child is a difficult task. Additionally, the child will continue to require numerous services from the State to meet his needs whether the mother’s parental rights remain intact or not.
Given the almost total uncertainty as to whether the child will ever receive any stability or permanency if the judgment stands, and the almost total certainty that he will suffer serious emotional turmoil if it does, we can perceive no advantage to the child in disturbing the status quo. Our supreme court has held that a juvenile court should maintain foster care or another third-party custodial arrangement without terminating parental rights when a child shares a beneficial emotional bond with a parent and the custodial arrangement ameliorates any threat of harm presented by the parent. See Ex parte A.S., 73 So.3d 1223 (Ala.2011). Consistent with that analysis, we hold that the juvenile court erred in terminating the mother’s parental rights rather than maintaining the current custody and visitation arrangement. See also CM., supra (reversing judgment terminating the parental rights of a mentally ill mother because the mother and the children had a strong bond, the mother had remained involved in the children’s lives after they were removed from her custody, the children desired to continue their contact and relationship with the mother, and the benefits of maintaining that familial relationship outweighed the potential benefits to the children that might arise from being adopted or finding a long-term placement). We therefore reverse the juvenile court’s judgment and remand the cause for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the judges concur.