MOORE, Judge,
concurring in the result in part and dissenting in part.
I concur that the expert testimony of Dr. Jack Carney, a licensed psychologist, was admissible and that reasonable reunification efforts were made in this case; however, I do not agree "with all of the statements of the law made in the main opinion to reach those conclusions. Moreover, as to the remaining issues addressed in the main opinion, I respectfully dissent.
At the trial of the third petition to terminate the parental rights of C.S. (“the mother”) to her natural child, A.L.C. (“the child”), the Mobile Juvenile Court (“the juvenile court”) received evidence indicating that, although the child had been removed from the custody of the mother in 2004, when the child was 2 years of age, the mother and the child had since consistently visited with one another both formally and informally 2 to 4 times a month for 45 minutes to an hour at a time. Carmelita Millsap, a caseworker for the Mobile County Department of Human Resources (“DHR”), who had observed the visitations between the mother and the child since 2008, testified that, during the visitations, the mother and the child had interacted with one another, had played, had snacked, had done homework, had watched television, and had talked, all typical things a parent would do with a child during visitation. Millsap also testified that the child knows the mother as her “other mom,” that the child greets the mother with a hug, that the mother and the child love one another, that the mother and the child look forward to their visitations together, and that the child still wants to visit with the mother. B.S. (“the maternal grandmother”) testified that, during the informal visits, the child had appeared happy to see the mother and that the mother and the child had talked, laughed, and joked together; she also testified that the mother and the child share a mother/daughter bond.
In its final judgment, the juvenile court determined that, “although the mother and child have a relationship, the child has a more significant relationship with the current foster parents”; however, the juvenile court also found as follows:
“Given the age of the child, and the relationship between the child and the mother and the relationship between the mother and the foster parents, this Court is convinced that the foster parents, (and later the adoptive parents), will allow the child to maintain a significant relationship with the mother and that the same would be in the best interest of the child.”
(Emphasis added.) Reading the foregoing provisions of the judgment in pari mate-ria, so as to give effect to every word used by the juvenile court, see Moore v. Graham, 590 So.2d 293, 295 (Ala.Civ.App.1991) (“Separate provisions of judgments, like provisions of contracts, should be construed in pari materia, and the entire judgment — all provisions considered — should be read as a whole in the light of all the circumstances, as well as of the conduct of the parties.”), it becomes apparent that the juvenile court found that the child had maintained a significant relationship with the mother, the continuation of which would be in the best interests of the child.
The judgment, when read as a whole, cannot reasonably be interpreted in any other way. The juvenile court stated exactly those words in its judgment when it found that the foster parents would allow “the child to maintain a significant relationship with the mother and that the same would be in the best interest of the *688 child.” It may be true that the juvenile court found that the relationship between the child and the foster parents was more significant than the relationship between the child and the mother, but that statement does not in any way detract from the finding that the child does, indeed, have a significant relationship with the mother. The juvenile court also concluded, as a matter of fact, that adoption by the foster parents would be in the best interests of the child, but, again, that does not contradict the factual finding that it also would be in the best interests of the child to continue her relationship with the mother. Those two findings are not mutually exclusive as a matter of fact, although, as I will explain later, they present a legal conundrum. To the extent that the main opinion concludes that the juvenile court did not find that the mother and the child share a significant relationship that should be continued, 166 So.3d at 686, the main opinion is simply incorrect.
Instead of applying the law to the facts as found by the juvenile court, the main opinion purports to make its own finding of fact as to the relationship between the mother and the child. The main opinion recites some of the evidence that is unfavorable to the mother and then concludes that “no such significant, meaningful relationship exists between the mother and the child.” 166 So.3d at 686. DHR did adduce the evidence cited by the main opinion, but the juvenile court obviously rejected that evidence when it found, based on the evidence favorable to the mother, that the mother and the child share a “significant relationship” and that it would serve the best interests of the child to máintain that relationship. The above-quoted language from the main opinion directly contradicts the express findings of the juvenile court; however, this court cannot reweigh the evidence or substitute its judgment for that of the juvenile court who observed and heard the witnesses. See Ex parte T.V., 971 So.2d 1, 9 (Ala.2007). The main opinion clearly errs in making factual findings that are totally contrary to those found by the juvenile court.
Applying the law to the facts as actually found by the juvenile court, and not as found by the main opinion, the judgment should be reversed.
Some jurisdictions allow for parents to maintain their visitation rights even after termination of their parental rights, see Kristina V. Foehrkolb, When the Child’s Best Interest Calls for It: Post-Adoption Contact By Court Order in Maryland, 71 Md. L.Rev. 490 n. 4 (2012) (citing Md. Fam. Law § 5-324(b)(l)(ii)(5)), or even after adoption by a third party, id. at 510 n. 145 (citing Annette Ruth Appell, Reflections on the Movement Toward a More Child-Centered Adoption, 32 W. New Eng. L.Rev. 1, 3 n. 6 (2010)), if it is in the best interests of the child. However, Alabama law provides that a judgment terminating parental rights concludes the parent’s right to any contact or association with the child. See Ex parte M.D.C., 39 So.3d 1117, 1124 (Ala.2009) (quoting M.D.C. v. K.D., 39 So.3d 1105, 1112 (Ala.Civ.App.2008) (Moore, J., dissenting)) (“ ‘A judgment terminating parental rights immediately and permanently severs the parent’s right to custody, control, and affiliation with the child.’ ”). Alabama law does not provide a mechanism, such as a so-called “open adoption,” see Foehrkolb at 509, which would allow for a parent whose parental rights have been severed to maintain a legally enforceable right to continued visitation with his or her child. Furthermore, Alabama law does not provide any legal means by which a child may compel an adoptive parent to allow continued contact with a former parent whose parental rights have been terminated. Under Alabama law, a juvenile court may legally *689 protect a parent’s right to, and a child’s interest in, continued association only by maintaining the parent-child relationship.
That does not mean that a juvenile court that finds that it is in the best interests of the child to maintain the parent-child relationship must sacrifice the child’s interest in permanency and stability. Our legislature has recognized that termination of parental rights and adoption by foster parents is only one of many ways to achieve permanency for a dependent child. See Ala.Code 1975, § 12-15-315(a)(2). A juvenile court may also achieve permanency by placing a child “in another planned permanent living arrangement,” Ala.Code 1975, § 12 — 15—315(a)(6), which would include permanent placement of the child in a long-term foster home without a termination of parental rights and adoption. See Department of Human Servs. v. G.N., 263 Or.App. 287, 828 P.3d 728 (2014).
In this case, the mother, through her attorney’s questioning of Ashley Carlock, Millsap’s supervisor, adduced evidence indicating that the foster parents, who have already raised the child in their home for the last 10 years, were committed to the child regardless of whether the mother’s parental rights were terminated and regardless of whether they were allowed to adopt the child. Carlock essentially admitted that the foster parents would continue to raise the child under another planned permanent living arrangement (“APPLA”). However, Carlock testified that she, as the DHR representative, did not recommend APPLA because “APPLA is not permanency. APPLA is letting this child linger in foster care until she ages out....” On that point, Carlock is incorrect. APPLA is a legislatively acknowledged form of a permanent-custody arrangement for a dependent child.
Carlock also testified that
“[w]e have a family that is willing to provide a permanent home for [the child] through adoption. APPLA is normally a plan that’s utilized once all other plans have been exhausted. And, also due to [the child’s] age. She’s only 12. APPLA is not usually a plan that we apply to children until they’re age 14.”
However, Alabama law provides that all viable alternatives must be exhausted before terminating parental rights. See Ex parte Beasley, 564 So.2d 950 (Ala.1990). If a child has a strong emotional bond with a parent that should be continued, a juvenile court must determine whether the child can be placed in a safe and permanent custodial arrangement that preserves that relationship without subjecting the child to parental harm. See T.D.K. v. L.A.W., 78 So.3d 1006, 1011 (Ala.Civ.App.2011). If a' foster family is willing to provide a permanent home for a child while supervising beneficial visitation with the parent, then maintenance of the status quo represents a viable alternative to termination of parental rights. See B.A.M. v. Cullman Cnty. Dep’t of Human Res., 150 So.3d 782, 785 (Ala.Civ.App.2014).
When a viable APPLA exists, neither DHR nor a juvenile court can simply elect to pursue termination of parental rights with adoption because it considers that to be a better option for the child. Parents and children have a fundamental right to maintain association with one another. K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003). Substantive due process guarantees that the government cannot dissolve that right when a less drastic alternative is available that will protect the interests of the child. Ex parte Beasley, supra. In this case, the mother specifically identified a viable APPLA for the juvenile court that would simultaneously protect the child from harm, preserve the beneficial relationship between the mother and the child, and provide the child with stability and permanency. DHR did not present any evidence indicating that using *690 APPLA would adversely affect the child psychologically or otherwise.[3] As a matter of law, the juvenile court could not reject APPLA in order to facilitate the adoption of the child by the foster parents with a mere “aspirational expectation” that the foster parents would voluntarily continue visitation between the mother and the child. 166 So.3d at 686 n. 2.
The main opinion provides that
“[t]he juvenile court’s aspirational expectation that the child’s long-term foster parents would permit some continued postjudgment contact between the child and the mother in no way' undercuts the force of that court’s determination to the effect that the child in this case, after almost 10 full years in foster care, deserves the stability and permanency of adoption by her long-term foster caregivers.”
166 So.3d at 686 n. 2. The main opinion is legally incorrect. The finding that it is in the best interests of the child to continue to have contact with the mother does override the finding that it would serve the best interests of the child to be adopted. As a matter of Alabama law, the juvenile court cannot simultaneously terminate parental rights so as to allow for the adoption of the child and preserve the mother’s right to, and the child’s interest in, a continued relationship with the mother. Because of substantive-due-process concerns, the right to a continued parent-child relationship prevails in such cases, as explained above. The main opinion does not cite any law in support of its proposition otherwise.
The mother argued before the juvenile court, and now argues before this court, that the judgment terminating her parental rights should be reversed because the juvenile court failed to exhaust all viable alternatives. The main opinion affirms the judgment based on a distorted version of the facts, but not on an application of the law to the facts as actually found by the juvenile court. When the law is applied to the facts as actually found by the juvenile court, the only legally correct result is a reversal of the judgment. Therefore, I cannot concur with the decision to affirm the judgment of the juvenile court terminating the mother’s parental rights.

. Notably, DHR also failed to present any expert testimony as to the expected psychological effect on the child of the termination of the mother's parental rights.