PER CURIAM.
Eric J. Chamberlin (“the husband”) appeals following the denial of his .post-judgment motion. The husband filed the motion after, the Russell Circuit Court (“the trial court”) entered a judgment divorcing .Amanda J, Chamberlin (“the wife”) and him.
The record indicates the following. The parties married, in 2004. Three children were bom of the marriage. At the time of the divorce hearing in this matter, the children were 6 years old, 3 years old, and 18 months old. The wife, the primary wage-earner in the family, was a captain-in the United States Army, serving full-time as a veterinarian. She testified that her gross monthly income was $7,200.
The husband, an ordained minister, was a captain in the United States Army Reserve, serving as a chaplain. As a reservist, the husband’s job was part-time, and he earned $800 a month. He also drove a school bus for a church-affiliated private school. In lieu, of payment for that job, the husband said, the parties were able to send their oldest child to the private 'school without having to pay tuition. The husband testified that he held master’s degrees in religion and in religious education. He testified that he had been, the children’s primary caregiver, especially while the wife was deployed to Kosovo in 2008 and to Afghanistan from July 2011 to July 2012. , ...
The parties agreed that they did not have much in the way of marital assets. They purchased the marital residence in May 2010 using a loan the wife was able to receive through the Department of Veterans Affairs (“VA”). Both the husband .and the wife testified that they had little to no equity in the house at the time of the hearing. Also, by the time of the hearing, the husband and the wife had already divided the personal property between them.
At the hearing, the husband made accusations of adultery against, the wife. He testified that he believed that she had had numerous affairs during their marriage. The record includes e-mail correspondence that the husband had with members of the wife’s chain of command in which he accused the wife of “harlotry.” The husband claimed that- the wife had had affairs both with civilians, including two women, and with military members, including members of her unit. The husband also accused members of the army of helping the wife •to “cover up” her alleged affairs. In the emails to the wife’s superior officers, the husband demanded that members of the wife’s unit be kept away from the parties’ children. If the children were “exposed” to those soldiers “or any other suspected lover,” the husband wrote, he would “go to the press and use this as'a wedge issue to show how commanders are covering up affairs of their own officers.”
The wife denied the husband’s allegations of adultery. The wife testified that among the people the husband had accused her of sleeping with were a husband and wife who were allowing her to stay with them during the pendency of the divorce, her childhood friend, a soldier in her unit, and a male friend. The wife also testified that the husband had told the children that divorce is .a sin and that the wife was “a whore,” “a liar and an adulterer,” that she did not love Jesus, and that she wanted to sin.
On September 5, 2013, the day after the hearing, the trial court entered a judgment *1019 divorcing the parties.. In the judgment, the trial court wrote:
“No probative evidence was produced to link a physical relationship between [the wife] and others during the marriage. [The wife] testified that she had no sexual relations with other persons during the marriage of the parties. There is no. proof, even circumstantial, that there was physical relationship between '[the wife] and any other person as alleged by. [the husband].”
The wife was awarded primary physical and legal custody of the children subject to the husband’s “liberal visitation rights.” In ordering the husband to pay child support, the trial- court found that the husband was voluntarily underemployed based on his income and training, and it imputed income of $2,000 a month: to the husband. Relying on child-support forms completed by the wife’s attorney, the trial court ordered the husband to pay $418 a month in child support.
The trial court awarded the wife the marital residence and made her responsible for all indebtedness on the residence. She was also made responsible for the indebtedness on the vehicle she had leased in her name. The trial court also awarded the husband and the wife the property, they had previously divided between themselves.
On October 1, 2013, the husband timely filed a postjudgment motion, which he titled as a motion for a new trial, pursuant to Rule 59, Ala. R. Civ. P. Also after the divorce judgment was entered, the wife initiated contempt proceedings and filed a motion for a restraining order.. At the October 7, 2013, hearing on the motion for a restraining order, the wife testified that, after the divorce judgment was entered, the husband had engaged in conduct that had made her fear for her safety and for the safety -of the ’children. She -testified regarding an incident that occurred on September 17, 2013, in which she took the parties’ oldest child to soccer practice at Fort Benning, Georgia, where she was stationed. The husband was the soccer coach. The child mentioned to the husband that he might be going to a new school. • The -wife said that, in response, .the husband “became enraged, started telling the children that [she]-was evil and a harlot.”- • The husband then yelled in front of the-parents and children at the soccer field that the wife was evil, a harlot, and slept with soldiers. .The wife said that she asked the husband to walk away and that she* reminded him that he would be violating a previously entered court order if he continued to make those comments. One of the other coaches pulled the husband aside, the wife said, and she and the children left the field in her vehicle.
As she was driving, the wife testified, she noticed the husband pursuing her “very quickly” in his vehicle. She drove to the parking lot of her office, and the husband “aggressively forced his car next to hers and was swerving toward her.” The wife said that she was scared and called the military police (“the MPs”). She also saw someone she knew and asked him to help her. When the husband saw that the wife was not-going to exit her.vehicle, she said, he turned his attention to soldiers in the parking lot, pointing her out and yelling, that she was a harlot and slept with soldiers., The wife said that she remained in her vehicle until the MPs arrived. The husband left the military post before he could be detained. ■ The wife described the children as being “very upset” by the incident. The man from whom the wife had sought help also testified, at the hearing and corroborated the. wife’s account.
A few days after the events that occurred at the soccer field, the wife said, she took her oldést child to school at the *1020 private school where the husband worked as a bus driver. As she was sitting in the vehicle, the wife said, the husband opened both the driver’s door and the passenger-side door and told the wife that he believed that taking the oldest child out of the private school would harm “the children, and he would do anything to protect the children, even if it meant killing us both.” The oldest child, who was seven years old at the time, was sitting in the vehicle at the time. That evening, the wife said, she received an e-mail from the husband in which he said, among other things, that he was “still trying to decide how to approach this so-called liberal visitation,” adding that he was
“not desirous to split the kids in half. [He] would demonstrate [his] love to them by sincerely letting them go into the hands of God. While they may not understand it today, [his] hope is that one day God would help them to understand that [he] did it out of love.”
The wife testified that she interpreted the husband’s comments, both at the school and in the e-mail, “as a threat to the children, that [the husband] was willing to protect them by any means.”
The wife testified that the husband let her know he was watching her. He sent the wife numerous text messages telling the wife where she was and who was with her. The wife also submitted a recording of voice messages the husband had left for the children. In the voice messages, the husband can be heard making negative comments about the wife and telling the oldest child to let his younger siblings know. The husband also told the oldest child he was sorry that child had to attend a new school, even though the child told the husband he was excited about going to the new school. The husband urged the child to wear his old school’s uniform to the new school to “protest” having to attend that school.
The wife also testified to an incident that occurred on October 6, 2014 — the day before the hearing on the wife’s motion for a restraining order, when the parties were exchanging the children at the Russell County Sheriffs Department. The wife said that, as the husband was exiting his car, he asked her if she was wearing her boyfriend’s shirt. The wife said that the shirt was hers, but the husband became visibly upset. The husband threatened to kill the wife’s boyfriend. The wife testified that the husband whispered: “T’m going to cut him open in front of you and make you watch, and I’m going to kill all of us and leave you alive. And all of us, he gestured to the children in the car and to himself.’ ” An audio recording of the incident was submitted into evidence. Because the husband is whispering, it is difficult to discern all of his words.
Against the advice of his attorney, the husband testified at the hearing on the wife’s request for a restraining order. He said that, when the parties exchanged the children in the sheriffs office parking lot, he did not remember anything that occurred after he saw the wife wearing a shirt “that man” had given to her. However, the husband acknowledged that it was his voice on the recording. The husband also, acknowledged that people in his chain of command directed him to receive counseling to help him deal with the divorce.
At the conclusion of the hearing, the trial court left in effect a prior restraining order that had been entered against the husband as it pertained to the wife. The trial court said that, based on the testimony adduced at the hearing, the husband was to have no contact with the children, including school contact or telephone contact. The trial court further ordered the *1021 husband to obtain mental-health treatment. Until the trial court received notice from a mental-health professional that the husband could safely be around the children, the court ordered, the husband would have no contact with them. The trial court also denied the husband’s post-judgment motion. The husband timely appealed.
On appeal, the husband contends that the trial court erred in failing to hold an evidentiary hearing on his post-judgment motion.
“[I]f a party requests a hearing on its motions for a new trial, the court must grant the request. Rule 59(g), Ala. R. Civ. P. See Walls v. Bank of Prattville, 554 So.2d 381, 382(Ala.1989) (‘[WJhere a hearing on a motion for [a] new trial is requested pursuant to Rule 59(g), the trial court errs in not granting such a hearing,’).”
Flagstar Enters., Inc. v. Foster, 779 So.2d 1220, 1221 (Ala.2000) (emphasis added). However, a trial court will not be held in error for failing to hold a hearing that was not requested. Kilpatrick v. Kilpatrick, 678 So.2d 1185, 1186 (Ala.Civ.App.1996). The record in this case indicates that the husband did not request a hearing on his postjudgment motion; therefore, he waived his right to a hearing. B.A.M. v. Cullman Cnty. Dep’t of Human Res., 150 So.3d 782, 783 (Ala.Civ.App.2014); see also Greene v. Thompson, 554 So.2d 376, 381 (Ala.1989); and Frederick v. Strickland, 386 So.2d 1150, 1152 (Ala.Civ.App.1980).
As to the substance of the post-judgment motion, although it is titled a “motion for a new trial,” in substance it is both a motion for a new trial and to alter, amend, or vacate the divorce judgment. “Our caselaw is clear ... that it is the substance of a motion, not its nomenclature, that is controlling; ‘the relief sought in a motion determines how to treat the motion.’” Campton v. Miller, 19 So.3d 245, 249 (Ala.Civ.App.2009) (quoting Allied Prods. Corp. v. Thomas, 954 So.2d 588, 589 n. 3 (Ala.Civ.App.2006)). On appeal, as he did in his postjudgment motion, the husband argues that the trial court abused its discretion by awarding the wife what the husband says was 100% of the marital assets.
“ ‘The decision whether to grant or to deny a motion for a new trial rests within the sound discretion of the trial court.’ CSX Transp., Inc. v. Miller, 46 So.3d 434, 446 (Ala.2010) (citing Jordan v. Calloway, 7 So.3d 310, 313 (Ala.2008)).”
CNH America, LLC v. Ligon Capital, LLC, 160 So.3d 1195, 1209 (Ala.2013). Moreover, our standard of review regarding a property division is well settled.
“When the trial court fashions a property division following the presentation of ore tenu,s evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, hot equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038.”
Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).
The only marital property the husband discusses in his argument on appeal is the marital residence. In his appellate brief, the husband states:
“Counsel for [the] husband admits that although very little information was *1022 given the court regarding the current value and equity in the marital home, it surely is not equitable that [the] husband receives 0% of the marital estate and [the] wife receives. 100% of the marital estate.”
The record does not support the husband’s contention. The marital residence was purchased in 2010 using a VA loan. The parties: agreed at the divorce hearing that there was little to no equity in the house. Although it is true that the wife was awarded the marital residence, she was also made solely, responsible for the indebtedness on that residence. The record also indicates that, before the hearing, the parties had already divided their personal property. The value of the property that each party received in the division of assets is not included in the record, but the husband’s assertion that he received “0%” of the marital estate is not accuraté. The wife was awarded the vehicle in her possession', but it was undisputed that that vehicle was leased. The record does riot cohtain evidence of any other marital assets that the parties may 'have had. Based on the record before us, we cannot say that the division of marital property was inequitable. Thus, the trial court did not abuse its discretion in denying the husband’s postjudgment motion on the issue of the division of marital property.
 The husband also asserts that he is entitled to a new trial because, he says, the trial court abused its discretion in awarding the wife primary custody of the children. In support of his argument, the husband points out his “concerns” about the wife’s lifestyle.
“ ‘Alabama law gives neither patent priority in an initial custody determination. Ex parte Couch, 521 So.2d 987 (Ala.1988). The controlling consideration in such a' case is the best interest of the child. Id. In any case in which the court makes findings of fact based on evidence presented ore tenus, an appellate court will presume that the trial court’s judgment based on those findings is correct, and it will reverse that judgment only if it is found to be plainly and palpably wrong. Ex parte Perkins, 646 So.2d 46 (Ala.1994). The presumption of correctness accorded the trial court’s judgment entered after the court has heard evidence presented ore tenus is especially strong in a child-custody case. Id.’
“Ex parte Byars, 794 So.2d 345, 347 (Ala.2001).
“‘“This presumption [accorded to the trial court’s findings of fact based on. ore tenus evidence], is based on the trial court’s unique position to directly observe the witnesses and to assess them demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. ‘In child custody cases especially, the perception of an attentive trial judge • is - of great importance.’ Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981). In regard to custody determinations, this Court has also stated: ‘It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.’ Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).”
“ ‘Ex parte Fann, 810 So.2d 631, 632-33 (Ala.2001).
“‘In a divorce action between two fit parents, where there has been no prior custody determination and neither parent has voluntarily., relin *1023 quished custody of the child, the “best interest”, of the child is controlling; the parties stand' on “equal footing” and no presumption inures to either parent. , ‘““The trial court’s overriding consideration is the children’s best interest and welfare.” ’ ” Smith v. Smith, 727 So.2d 113, 114 (Ala.Civ.App.1998) (quoting Collier v. Collier, 698 So.2d 150, 151 (Ala.Civ.App.1997), quoting in turn Graham v. Graham, 640 So.2d 963, 964 (Ala.Civ.App.1994)).
‘“In considering the best interests and welfare of the child, the court must consider the individual facts of each case:
“ ‘ “The sex and age of the children are indeed very important considerations; however, the court must go beyond these to consider the characteristics and needs of each child, including their emotional, social, moral, material and educational needs; the respective home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children; the interpersonal relationship between each child and each parent; the interpersonal relationship between the children; the effect on the child of disrupting or continuing an existing custodial status; the preference of each child, if the child is of sufficient age and maturity; the report and recommendation of any expert witnesses or other independent investigator; available. .alternatives; and any other relevant matter the evidence may disclose.”
“ Ex parte Devine, 398 So.2d 686, 697 (Ala.1981).’
“Fell v. Fell, 869 So.2d 486, 494-95 (Ala.Civ.App.2003).”
Long v. Long, 109 So.3d 633, 645-46 (Ala.Civ.App.2012).
The evidence set out above ⅛ dicates that the husband has engaged in conduct that led both his superiors and the trial court to order him to seek treatment for his mental health. Given the behavior of the,husband before and during the litigation of this matter, we find that substantial evidence supports the trial court’s determination that it would be in the children’s best interest to be in the custody of the wife. Therefore, we conclude that the trial court did not abuse its discretion in denying the husband’s post-judgment motion on this ground.[1]
*1024 Finally, the husband contends that the trial court erred in calculating his monthly child-support obligation. The husband points out what appears to be a clerical error on Form CS-42 (“the form”), which is used to calculate child support based on the guidelines found in Rule 32, Ala. R. Jud. Admin.
The wife’s attorney completed the form, which the trial court relied on in determining the husband’s child-support obligation. The form indicates that the parties’ combined monthly income (including the $2,000-a-month income imputed to the husband) was $9,250. The form then shows that the basic child-support obligation is $1,868. However, the Rule 32 guidelines indicate that, for parties with a combined gross monthly income of $9,250, basic monthly child support for three children is $1,694. According to the chart in the guidelines, parties with a combined gross monthly income of $9,050 and four children to support would have a basic monthly child-support obligation of $1,868. It appears that, in completing the form, the wife’s attorney simply misread the chart. Because the husband’s child-support obligation is based on the incorrect figure, the trial court erred in denying the husband’s postjudgment motion as to this issue. Therefore, we must reverse that portion of the divorce judgment establishing the husband’s child-support obligation and remand the cause for the trial court to correct the clerical error on the form and to recalculate the husband’s child support accordingly. We note that the husband does not challenge the trial court’s conclusion that the husband was underemployed and imputing income of $2,000 a month to him. He also does not challenge any of the other figures on which his child-support obligation was calculated. Accordingly, any arguments that the trial court erred in determining the amount of income, work-related child-care costs, and health-care costs used in the calculation of child support are waived. Pardue v. Potter, 632 So.2d 470, 473 (Ala.1994) (“Issues not argued in the appellant’s brief are waived.”). Thus, the husband is not entitled to a new trial on the issue of child support.
For the reasons set forth above, that portion of the divorce judgment ordering the husband to pay a monthly child-support obligation of $418 is reversed, and we remand the cause to the trial court for the limited purpose of recalculating the husband’s child-support obligation using the correct basic child-support figure of $1,694. The remainder of the judgment is affirmed.
The wife’s motion to strike is granted. See note 1, supra. The wife’s motion for sanctions pursuant to Rule 38, Ala. R.App. P., is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.
THOMAS, J., concurs in part and concurs in the result, with writing.

. In his appellate brief, the husband included an "addendum” composed of documents he believes would support his assertion that the trial court abused its discretion in awarding custody of the children to the wife. The documents were created after the trial of this case and are not included in the record on appéal. , Furthermore, the record does not contain a motion to supplement the record with the documents, as required by Rule 10(f), Ala. R.App. P. The wife has filed a motion to strike the documents contaihed in the addendum.
" ‘ " '[Attachments to briefs are not considered part of the record and therefore cannot be considered on appeal.’ ” Morrow v. State, 928 So.2d 315, 320 n. 5 (Ala.Crim.App.2004) (quoting Huff v. State, 596 So.2d 16, 19 (Ala.Crim.App.1991)). Further, we cannot consider evidence that is not contained in the record on appeal because this Court’s appellate review " ‘is restricted to the evidence and arguments considered by the trial court.'" Ex parte Old Republic Sur. Co., 733 So.2d 881, 883 n. 1 (Ala.1999) (quoting Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992), ánd citing Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C., 580 So.2d 1326 (Ala.1991)).’
”Roberts v. NASCO Equip. Co., 986 So.2d 379, 385 (Ala.2007).”
*1024 Hildreth v. State, 51 So.3d 344, 352 (Ala.Civ.App.2010). Accordingly, the wife's motion to strike is granted.